## 33628. DeKALB COUNTY v. TRUSTEES, DECATUR LODGE NO. 1602, B. P. O. ELKS et al.

MARSHALL, Justice.

The present case is here on certiorari. It involves the award of attorney fees in a condemnation proceeding. A brief review of the development of the law in this area at the outset would be helpful:

In *White v. Ga. Power Co.,* 237 Ga. 341, 343 (227 SE2d 385) (1976), this court held that "the words 'just and adequate compensation' contained in our Constitution are to be interpreted by the judiciary to include attorney fees incurred by a condemnee or condemnees in an eminent domain case and are also to be interpreted to include all reasonable and necessary expenses of litigation incurred by such condemnees in eminent domain cases." A three-step procedure was established in *White* for awarding attorney fees and expenses of litigation: First, the factfinder must determine the fair market value of the property actually taken plus consequential damages to any of the condemnees' remaining property that is not taken. Second, the factfinder must determine whether additional damages should be paid by the condemnor to the condemnee; and if the factfinder determines that additional damages should be paid, such as attorney fees and reasonable and necessary expenses of litigation, the factfinder must make its recommendation to the trial judge to this effect. Third, if such a recommendation is made, the trial judge must conduct an evidentiary hearing and then determine the amount of such recommended damages and award such amount to the condemnee.

*White v. Ga. Power Co.,* supra, was reaffirmed in *Dept. of Transp. v. Doss,* 238 Ga. 480 (233 SE2d 144) (1977) and it was also held in that case that, implicitly, the award of attorney fees must be reasonable.

In *Dept. of Transp. v. Flint River Cotton Mills,* 238 Ga. 717 (235 SE2d 31) (1977), it was held, in accordance with Justice Ingram's concurrence in *White,* 237 Ga. at p. 351, that the purpose of awarding attorney fees and litigation expenses is to reimburse the condemnee for those expenses he must incur in order to obtain the fair market value of his property taken; therefore, in *Flint River Cotton Mills,* the award of attorney fees and expenses of litigation was reversed, since the factfinder had not awarded the condemnee any more for the property than the condemnor had offered.

In the present case, the condemnor offered the condemnee $717,300 for the property. The factfinder, a special master, awarded $844,123 and, in accordance with the procedure set out in *White,* recommended that attorney fees be awarded. The condemnor presented evidence that based on the valuation of the condemnee's attorney's time at $50 to $100 per hour, a reasonable attorney-fee award would lie in the range of $5,000 to $7,500. (The condemnee's attorney stated in an affidavit submitted to the trial court that he had devoted approximately 50 hours to the case.) The trial court awarded $42,274 in attorney fees, which is one third of the difference between the condemnor's offer and the ultimate award. The Court of Appeals affirmed, holding that in the absence of guidelines from this court to be used in determining the amount of attorney fees awardable in condemnation cases, it would follow the rule that appellate courts are without authority to fix attorney fees (*Reserve Life Ins. Co. v. Gay,* 214 Ga. 2, 3 (102 SE2d 492) (1958)); therefore, the Court of Appeals held that it would affirm an attorney-fee award in a condemnation case if there is any evidence to support it, at least in the absence of clear proof that it is the result of bias or prejudice. We granted certiorari. *Held:*

The foregoing recitation of the development of the law in this area by this court illustrates the difficulties encountered when appellate courts attempt to legislate.

Almost every appeal of eminent domain judgments which reaches this court raises new questions, most of which could have been answered initially by properly drawn legislation.

We have reached the conclusion that this court was in error in *White v. Ga. Power Co.*, 237 Ga. 341, supra, when it held, "the words 'just and adequate compensation' contained in our Constitution are to be interpreted by the judiciary to include attorney fees incurred by a condemnee or condemnees in an eminent domain case and are also to be interpreted to include all reasonable and necessary expenses of litigation incurred by such condemnees in eminent domain cases."

We now overrule *White* and subsequent cases decided pursuant to its holdings. The reasons for this decision are set forth in the majority opinion in *Bowers v. Fulton County*, 227 Ga. 814 (183 SE2d 347) (1971) and Justice Hall's dissenting opinion in *Dept. of Transp. v. Doss*, 238 Ga. 480, supra.

We reiterate that the majority of this court does not oppose the award of attorney fees in eminent domain cases. We simply hold that a proper construction of our Constitution does not require such award, and we further hold that this is a matter for legislative determination by the General Assembly.

*Judgment reversed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hill, J., who dissent.*

ARGUED JUNE 13, 1978 — DECIDED NOVEMBER 22, 1978 — REHEARING DENIED DECEMBER 5 AND DECEMBER 19, 1978.

*Harvey, Willard, Elliott & Olsen, Wendell K. Willard, Kutak, Rock & Huie, W. Stell Huie, Charles N. Pursley, Jr., Clara H. Axam, David G. Russell,* for appellant.

*Simmons, Martin, Warren & Szczecko, M. T. Simmons, Jr.,* for appellees.

*Haas, Holland, Levison & Gibert, Richard N. Hubert, Walter E. Sumner, Thomas N. Austin, Harland, Cashin, Chambers, Davis & Doster, Harry L. Cashin, Jr.,*

amici curiae.

NICHOLS, Chief Justice, dissenting.

The majority of this court has ignored stare decisis and has made bad law. The majority holds that these matters address themselves to the General Assembly. What, then, is the purpose of our Constitution? What, then, is the role of this court? Is it really the province of the General Assembly to interpret the Constitution?

Government and certain regulated businesses acting with the permission of government can decree that a person's largest investment, the home for which he has made payments during his entire working life, shall be leveled to the ground. The Constitution of Georgia requires, however, that the homeowner be made whole financially. Anything less than a monetary award that truly will make the displaced homeowner whole will not pass muster under our Constitution. I am astonished that the majority of this court has held to the contrary. *The people of Georgia surely will demand restoration of their rights by way of a constitutional amendment.*

Condemning authorities should not be in a position to coerce a homeowner into accepting less than the full value of his property based upon a threat, expressed or implied, that if he refuses the sum tendered, he will be subjected to protracted and costly litigation against the condemning authority's legions of lawyers and experts. The familiar statue of the American Minuteman with his flintlock rifle at the ready is a symbol of our freedom from the oppressions of our former king's red-coated armies. When in these times a citizen finds his private property invaded by an army of surveyors, engineers, planners, real estate appraisers and attorneys, employed by the condemning authority using the taxes or utility rates he and other citizens have paid, the front of the line of defense is the trial lawyer sustained by a sum of money sufficient to pay the legal fees and myriad other costs and expenses for which a landowner assumes liability when he dares to face a condemning authority in court. It should be obvious that a landowner who prevails in court on the issue of value is not made whole if he must pay his attorney fees and other costs and expenses of litigation

because such fees, costs and expenses reduce the amount of his recovery.

I cannot join the majority in such wholesale destruction of the rights of property owners. Instead, I dissent.

UNDERCOFLER, Presiding Justice, dissenting.

It is not right; it is not fair; it is not due process; and it is not constitutional for the government, or a public utility, to take your land without fully compensating you. In this country, a basic freedom is the right to own and possess land. When you are forced to surrender it for public good, you must be offered its fair price. If you are forced to sue to obtain its fair price then you must also recover the reasonable costs, including attorney fees, of waging the battle; otherwise, you are not fully compensated and have been mistreated, however unintentionally. For example if the state or utility offers you $10,000 for your land and a jury finds it real value to be $25,000 out of which you must pay your costs of litigation, including attorney fees, you have remaining a sum less than the real value of your land. Thus, you have been penalized for having to sue to enforce your right to be fully compensated by the government or utility whose expenses, including attorney fees, are paid by your taxes and your utility rates. The majority of this court holds to the contrary and I dissent.