## 57421. HOUSING AUTHORITY OF THE CITY OF ATLANTA v. SOUTHERN RAILWAY COMPANY et al.

BIRDSONG, Judge.

Condemnation proceedings. The Housing Authority of the City of Atlanta, Georgia, appellant, condemned the property upon which the Candler warehouse was located. One of the many property owners affected thereby was the Southern Railway System, representing several railway companies. The Southern R. Co. owned the main line rail running immediately adjacent to the warehouse facility. Southern also had the exclusive right to move all freight cars from the main line adjacent to the facility onto the Candler warehouse property and onto the trunk or spur lines that serviced each of the warehouse bays for the numerous tenants of the warehouse company. Southern earned fees for its switching service. The special master appointed to determine the just and adequate compensation due each affected property owner determined that Southern would suffer approximately $35-40,000 damages by being required to remove its tracks located upon the warehouse property. The special master denied Southern any damages for relocation costs or for lost profits. Southern being dissatisfied with the recommended award of the special master took an appeal to the superior court and demanded a jury trial. Upon the jury trial, the jury awarded Southern $37,733 moving costs, $30,247 relocation costs, $132,500 for loss of profits, and found that the appellee Southern was entitled to attorney fees and costs of litigation. The trial court after hearing evidence on attorney costs and costs of litigation awarded Southern attorney fees in the amount of

$63,697.97. This, together with the jury verdict, was made the judgment of the court. The Housing Authority has brought this appeal complaining principally of the award for lost profits and attorney fees. *Held:*

1. Appellant Atlanta Housing Authority urges a series of errors in support of its contention that lost profits was not a proper subject for damages. Included in its enumerations of error are the denials of motions for new trial, judgment nov, directed verdict, and numerous charges of the court dealing with lost profits and uniqueness of the property to the condemnee so as to entitle the condemnee to seek lost profits. Each of these enumerations either has or lacks validity depending on whether Southern was entitled to recover lost profits as a matter of law.

We conclude that the recent decision of this court in *Dept. of Transp. v. Kendricks,* 148 Ga. App. 242 (250 SE2d 854) is dispositive of this issue. In that case, we held, at p. 244: " '. . . in this state, under our constitutional requirement that the condemnee be paid "just and adequate compensation" before his property is taken, the question which properly addresses itself to the jury's consideration . . . is not "What has the taker gained?", but "What has the owner lost?", and that where there are separate interests to be condemned, the jury, in arriving at just and adequate compensation, is not only authorized but required to consider the value which the thing taken has to the respective owners of the interests being condemned. If just and adequate compensation to the owners of the various interests in the land being condemned requires that the total compensation exceed the value of the land, this presents no difficulty because, under *Bowers [Bowers v. Fulton County,* 221 Ga. 731 (146 SE2d 884)], . . . and under the constitutional requirement mentioned, the jury is not only required to render a verdict for . . . condemnees for the value of the land taken, but also from whatever damages result to the condemnees from the condemnation proceeding.' "

We are persuaded by the contentions and evidence presented by Southern, that Southern was seeking damages for a total loss of its business derived from its switching operations at the Candler warehouse.

Southern's evidence showed that as of the date of the taking by Atlanta Housing it would be required to remove its 6,000 feet of track; it would incur well defined expenses in relocating the same amount of track footage, and that over a period of 25 years (the expected life of the warehouse), it would lose profits that were clearly established by a multiple year experience factor of continuous profits. The evidence further showed that these profits might fluctuate but that a definitive range had been established over the past several years. The jury was given a range of a low of $109,000 to a high of $495,000 as the expected loss of business profits over the extended period. The jury's finding of $132,500 was well within the range of that evidence. We are further satisfied that Southern established clearly that its property rights in the Candler warehouse location were unique to Southern, both in location and operation. Under the holding of *Dept. of Transp. v. Kendricks,* supra, Southern was entitled to recover for lost profits where there was ample evidence to show that Southern suffered a business loss (whether partial or total), that the business was unique to Southern, and the profits were shown not to be remote or speculative. It follows that the trial court did not err in denying the motions for judgment nov, for a new trial, or for a directed verdict, nor did the court err in charging upon the issue of lost profits or uniqueness of the property to Southern. We reject the argument advanced by appellant that Southern had been successful in reclaiming the business of some of its displaced customers at the Candler warehouse (and hoped to regain it all) by serving those customers in new locations and therefore, Southern had in reality suffered no business loss, and thus no loss of profits. This argument ignores the fact that this reclaimed business was new business at new locations (even if with old customers) and that Southern had indeed irrevocably lost business from its customers at the warehouse site. The first seven enumerations of error are without merit.

2. In considering the second major area of enumerated error by Atlanta Housing, we are confronted with the question of the legality of the award of attorney fees in an amount of $63,697.97. The amount of such fees

is not in dispute. The parties argue only that such fees are permissible or, contrariantly that they are not authorized. In considering this proposition, we find ourselves impaled upon the horns of a juridical dilemma.

Initially we are confronted with the holding in the case of *Calhoun v. State Hwy. Dept.,* 223 Ga. 65, 67 (153 SE2d 418) which, in pertinent part held: "It [Art. I, Sec. III, Par. I of the Constitution] commands that he [the property owner] be paid just and adequate compensation. What is just and adequate is a justiciable question, and under the constitutional clause (Code Ann., § 2-123; Const. of 1945) requiring separation of powers, only the judiciary can lawfully determine that question. Can it be seriously doubted that the bill of rights vests interest in the individual? None of the three separate departments of the state — legislative, executive or judicial, has the power to reduce or abolish the constitutional right of the owner to receive just and adequate compensation for his private property taken for a public use. Only the judiciary can adjudicate the amount of such compensation and what evidence is relevant and admissible for that purpose." The Supreme Court of Georgia in *Martin v. Baldwin,* 215 Ga. 293, 299 (110 SE2d 344) held, "This 'is clearly an attempt by the legislature to perform a judicial function by construing a law, and offends article 1, section 1, paragraph 23 of the Constitution of this State (Code § 2-123), and is void.' *McCutcheon v. Smith* 199 Ga. 685 (2) (35 SE2d 144)."

Contrarily, we are confounded by the language of *DeKalb County v. Trustees, Decatur Lodge No. 1602, B. P. O. Elks* 242 Ga. 707, 709 (251 SE2d 243), wherein it was held "We have reached the conclusion that this court was in error . . . when it held, 'the words "just and adequate compensation" contained in our Constitution are to be interpreted by the judiciary to include attorney fees incurred by a condemnee or condemnees in an eminent domain case and are also to be interpreted to include all reasonable and necessary expenses of litigation incurred by such condemnees in eminent domain cases.' . . .

"We reiterate that the majority of this court does not oppose the award of attorney fees in eminent domain cases. We simply hold that a proper construction of our

Constitution does not require such award, and we further hold that this is a matter for legislative determination by the General Assembly."

Sandwiched in between these two cases are the line of cases represented by *White v. Ga. Power Co.,* 237 Ga. 341 (227 SE2d 385). The *White* case, supra, established as precedent, until subsequently overruled, the condemnee's right to recover attorney fees and a formula for determining the amount of such fees. We are now confronted with parties to litigation and a jury verdict that established rights by verdict and judgment entered after the precedent set by *White,* supra, and before that precedent was rescinded by *DeKalb County v. Trustees,* supra.

Perforce, we recognize that attorney fees are no longer an authorized element of just and adequate compensation in an eminent domain case. Nevertheless, we still must decide whether a judgment including an award of attorney fees entered when the verdict of attorney fees was authorized, can be affirmed.

As we read the language of the *White, Calhoun,* and *DeKalb County* cases, supra, we conclude that the recovery of attorney fees in an eminent domain case is neither required by constitution nor authorized by statute. On the other hand, we discern nothing that prohibits such a recovery within the constitutional concepts of due process contained in the Bill of Rights. In fact, at p. 709 of the *DeKalb County* case, it would appear that an award of attorney fees is constitutionally permissible so long as it is either judicially or legislatively authorized.

What then is the effect of the *DeKalb County* case upon the vested interests of the property owner arising under a judgment entered in accordance with the then existing state of law as established by *White* and its progeny? "The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort . . . vested rights

[may not be] impaired by a change of construction made by a subsequent decision." *Mut. Life Ins. Co. of N. Y. v. Barron,* 70 Ga. App. 454, 463 (28 SE2d 334). See also *Mitchell v. State,* 239 Ga. 3 (235 SE2d 509). It follows that the authoritative language of *Calhoun v. State Hwy. Dept.,* supra, a unanimous decision still unreversed, which held: " . . . [T]he vested right of the owners [to just and adequate compensation] can not be destroyed by applying the [law existing as of the date of the appeal] to a case that has already been tried" (Id., p. 67), should be controlling. See *Dehco, Inc. v. State Hwy. Dept.,* 147 Ga. App. 476, 477 (249 SE2d 282). We conclude that the award of attorney fees in this case is supported by evidence and legally includable in the judgment of the court below. See *Dept. of Trans. v. Kendricks,* 150 Ga. App. 9, post.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED MARCH 12, 1979 — DECIDED APRIL 24, 1979 — REHEARING DENIED MAY 14, 1979 — Before Judge McKenzie.

*Charles M. Kidd, John A. Pickens, Woodrow W. Vaughan, Jr.,* for appellant.

*Greene, Buckley, DeRieux & Jones, Thomas B. Branch, III, Burke O. Archer, Eileen Crowley,* for appellees.