57985. DEPARTMENT OF TRANSPORTATION v. SIMON et al.

Carley, Judge.
Condemnation proceedings were instituted against a portion of a lot owned by Mrs. Simon (condemnee). By its "Declaration of Taking," the Department of Transportation (condemnor) estimated the "just and adequate compensation" for the portion to be $14,900 and paid that sum into court. Thereafter, an order condemning the property, some .097 acres, was entered and the land taken. Mrs. Simon, being dissatisfied with the compensation, filed her notice of appeal, praying for a jury trial "as to the value of the property taken and the prospective and consequential damages to the remaining property," attorney fees and expenses of litigation.

The case came on for trial and the jury returned a verdict for $42,912 and attorney fees and costs. The condemnor appeals.

1. Mrs. Simon's property was condemned for construction of a limited access highway project. It appears that the same project also necessitated the condemnation of a portion of a lot adjoining Mrs. Simon's, as a result of which taking, the adjacent lot became landlocked. The owner of the allegedly landlocked parcel

is not a party to this in rem action which in no way involves the taking of or damage to such adjacent property. In his opening statement, the attorney for Mrs. Simon made reference to the landlocked nature of the adjoining property. The condemnor objected to references to property other than the condemnee's and moved for a mistrial. This motion was overruled, the court instructing the jury on the right of a landlocked property owner to condemn a 20-foot easement across the land of another upon payment of just and adequate compensation. His instructions concluded: "I would instruct you that you would not consider that in your evaluation of this particular property. In other words, the taking of the 20 foot easement, whether or not it will take place or not you should not consider in determining the value of the property taken. However, it is a real fact of life that it could possibly happen; or it could happen that you can't get proper planning and zoning to do anything with a 20 foot right-of-way. You need more than that in most places in Richmond County. So it might be that the person who is landlocked would be put in worst shape, I don't know, because I think you need 40 feet if you want to do anything with a piece of property. But anyway I am going to allow it in with those instructions."

During the trial on the issue of just and adequate compensation for the taking and damage to the condemnee's property, testimony as to the landlocked nature of the adjoining property and the possibility that a private right-of-way would be sought over the condemnee's remaining property was admitted into evidence, over the condemnor's strenuous objections and in his closing argument, the attorney for Mrs. Simon made the following statements: "There is no question that [the adjoining property] is landlocked, there is no dispute about it. There is no dispute that there is only one way for these people to get out. If they want to get out, they are going to get out right through our property. There is no evidence to the contrary. Sure, they may stay there forever; but does that make sense? Are the people just going to have their property there and never get to it, never use it? . . . What is so unbelievable to me, and I hope is unbelievable to you, is, that [the right of the adjoining

property owner to condemn a 20 foot right-of-way] has no effect on Mrs. Simon's property; that someone coming along looking for a piece of property on Highway 25 would not take into consideration that they are going to lose another 20 feet off of their property . . ." The condemnor again objected and moved for a mistrial, but its motion was overruled.

Finally, in his charge to the jury, the trial judge stated: "[W]here any person owns real estate to which he has no means of access, ingress or egress, such person may file a petition to condemn an easement of access, ingress and egress, not to exceed 20 feet in width across the property of an adjoining land owner. In such a case the adjoining land owner is compensated by the party obtaining the easement for the value of the property taken and any consequential damages to the property after the taking." The condemnor timely objected to this charge, on the grounds that "to inject the question of the right of some other property owner adjacent to the property involved in this taking to condemn an easement across it is prejudicial to the [condemnor] and, . . . is contrary to law . . ."

The condemnor enumerates as error the various rulings and actions of the trial court made with regard to the propriety of argument and admissibility of evidence concerning the landlocking of Mrs. Simon's neighbor and the possibility that, as the result, a private right-of-way would be sought across her remaining property. In other words, the condemnor contends that the landlocking of the adjoining property by the project, resulting in the possibility that a future easement might be taken over Mrs. Simon's remaining property, is not a "taking or a damaging" of that remainder which is compensable in this condemnation proceeding. Mrs. Simon argues that the fact that the highway project landlocked her neighbor and created the possibility that a 20-foot right-of-way will be sought over her property is a "circumstance" which adversely affects the present market value of her property remaining after the taking here at issue. It is thus urged that argument and evidence on this issue was proper as an element of "consequential damage" to her remainder, which she can recover in this condemnation proceeding.

The question presented for resolution is whether the taking of property adjoining Mrs. Simon's, resulting in the possible private condemnation of a right-of-way across her remaining property, is a compensable element of consequential damage to her remainder which may be recovered in this condemnation action. Art. I, Sec. III, Par. I of the Constitution of Georgia provides, inter alia: "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid . . ." Code Ann. § 2-301 (1). "There are only two elements of damages to be considered in a condemnation proceeding: first, the market value of the property actually taken; second, the consequential damage that will *naturally and proximately arise* to the remainder of the owner's property *from the taking of the part which is taken* and the devoting of it to the purposes for which it is condemned, including its proper maintenance and operation, and the measure of these consequential damages is the *diminution in the market value* of the remainder of the property *proximately arising from these causes* . . . [Cits.]" (Emphasis supplied.) *McArthur v. State Hwy. Dept.,* 85 Ga. App 500 (69 SE2d 781) (1952).

Thus in order for a condemnee to recover consequential damages to the remainder of his property when only a part is taken, it must appear that the damages to the remainder proximately and naturally arose from the condemnation and taking of the *condemnee's own property.* "Consequential damages to a contiguous tract of land having a different ownership from that in which the taking occurs may be real and may in fact exist, but *a separate owner's claim for consequential damages to his land contiguous to the tract where the taking occurs cannot be asserted in a condemnation action.* Consequential damages to 'the remainder of the tract in which the taking occurs' are the only consequential damages that may be recovered in the condemnation action." (Emphasis supplied.) *Ga. Power Co. v. Bray,* 232 Ga. 558, 560 (207 SE2d 442) (1974). See also *Southwire Co. v. Dept. of Transp.,* 147 Ga. App. 606, 607 (1) (249 SE2d 650) (1978).

In the case at bar it is apparent that Mrs. Simon's

claim for consequential damages was based not only on the "taking" of her property by the condemnor but also in part on the taking of the property of her adjoining landowner. It is because a portion of the adjacent lot was taken that the remainder of that property became landlocked; that egress and ingress to the remainder of that property is now impossible is an element of consequential damage to it, for which the adjoining landowner can receive compensation in a condemnation proceeding. See, e.g., *State Hwy. Dept. v. Howard,* 119 Ga. App. 298, 299 (7, 8, 9) (167 SE2d 177) (1969). The possibility that, as the result of this "taking" of his property, the adjoining landowner might condemn a private right-of-way across Mrs. Simon's property "may be real and may in fact exist." That there now exists the possibility that a private right-of-way will be condemned across her property may be a "circumstance" of Mrs. Simon's remaining property. But the fact remains that this real and existing circumstance did not arise proximately from the "taking" of *her* property and a claim for consequential damages which is based thereon may not be recovered in this condemnation proceeding. *McArthur,* supra; *Bray,* supra. Compare *State Hwy. Dept. v. Hood,* 118 Ga. App. 720 (165 SE2d 601) (1968). While in the instant case, unlike *Bray,* Mrs. Simon is not attempting to recover consequential damages to a contiguous tract having a different ownership, she does seek to increase consequential damages to her remainder by showing the loss of access of the adjoining property. See *Southwire Co.,* supra. If Mrs. Simon's remaining property has suffered damage by virtue of the taking which occurred on the adjoining tract, "then such damages must be asserted in a separate action against the condemnor. See *Richmond County v. Williams,* 109 Ga. App. 670 (137 SE2d 343) (1964)." *Bray,* supra at 561.

Resolution of this issue and the decision we reach here has been neither lightly undertaken nor easily made. Diligent research by both parties to this appeal and by this court has resulted in discovery of no case which is on "all fours" with the circumstances which are present here. The decision which is most analogous is State, through Dept. of Hwys. v. Smith, 353 S2d 322 (La. App.

1977). In that case the Louisiana Department of Highways sought to condemn certain property belonging to Smith and deposited a sum as compensation therefor. After a trial on the merits, a judgment was rendered, awarding an amount substantially over and above the amount deposited. On appeal, Smith argued that the award was sustainable, in part, because on property of other owners which was appropriated for the same project, the Tickfaw River was diverted, so that the remainder of Smith's property, which had fronted on the river prior to the construction of the highway project, was no longer as valuable as it had been. The Court of Appeals of Louisiana disagreed. "It is also clear that the damages sought do not arise from the taking in this case, but as the result of the taking on the adjacent property, and the location of the main channel of the Tickfaw River thereon. Considering the foregoing, we are of the opinion that whatever damages may have been suffered as a result of the relocation of the Tickfaw River are not recoverable in this case. We recognize that damages may be recovered in an appropriate proceeding when property is damaged for public purposes, even when there is no expropriation of a portion thereof. [Cit.] However, it is also settled that 'in an expropriation suit, the issue must be confined to ascertaining the market value of the property and the damage growing out of the expropriation, at the date when suit was filed, and to nothing else.' [Cit.] Since the loss in value arising from the diversion of the Tickfaw River did not result from the expropriation [of Smith's property], it cannot be recovered in this suit." State, through Dept. of Hwys. v. Smith, supra at 325. Thus, Louisiana has resolved the question posed in this appeal under a similar analysis to that which we have used. Such an analysis is, in our opinion, mandated by the rule of law that only those damages which naturally and proximately arise to the remainder of the tract as a result of the taking leaving such remainder are consequential damages which are recoverable in the condemnation action. *McArthur,* supra; *Bray,* supra.

Our determination that Mrs. Simon may not recover in this condemnation action for damages to her remaining property which proximately arise from the taking of

adjoining property does not leave her in the unfortunate position of being denied recovery for the loss of property she might sustain because of the construction of the project. Here, as in *Bray,* any damage her property has suffered by virtue of the taking which occurred on the adjoining property can be asserted in a separate action against the condemnor. Therefore, under our analysis, she is in no worse position than if the condemnor had "taken" *only* the property of the adjacent landowner for the project with the same landlocking result, for in that circumstance she clearly would have the right to seek recovery for any resulting damages to her property even though there had been no taking of her property. *Richmond County v. Williams,* supra. We see no reason why the procedural remedy should be different simply because Mrs. Simon's property has also been partially condemned in connection with the land acquisition phase of the same project. Such a procedure balances Mrs. Simon's ultimate right to recover "just and adequate compensation" for the damage done to her property with the requirement that the scope of compensable consequential damages in the condemnation be limited to those proximately arising from the taking of the condemnee's own property. All we hold, by this decision and in this opinion, is that consequential damage (loss of access) to adjoining property under separate ownership is not a compensable element of consequential damage (threat of possible private right-of-way condemnation) to Mrs. Simon's property which may be recovered by her *in this condemnation action.* Any damage to her property which proximately results from the taking of property other than hers must be asserted in a separate action against the condemnor. To hold otherwise — that Mrs. Simon can "bootstrap" herself, solely because a portion of her property has been condemned for the same project, into a recovery in this condemnation action of the damages she seeks as "consequential damages" to her remainder — would, in our opinion, make of condemnation proceedings an open Pandora's box of potentially limitless claims for such "damage" which have their genesis not in the condemnation and taking of the condemnee's property but in the construction of the

project itself. This we decline to do. If the effect of condemnation for the same project on adjoining property can be shown by Mrs. Simon as evidence of consequential damages to her remainder, should a claim that the taking of property by the condemnor for the same project 50 miles away results in consequential damage be cognizable in a condemnation proceeding? What if Mrs. Simon and her neighbor were business competitors and his entire tract had been taken for the project? Could the condemnor show evidence of this and urge that the elimination of her competition by the project is a "consequential benefit" to her remainder which should be offset against consequential damages? Or could the condemnor demonstrate that, under the circumstances, the landlocked neighbor may be willing to sell to Mrs. Simon at a bargain price rather than to seek a private right-of-way and that this is a "consequential benefit" to Mrs. Simon's remaining property? *State Hwy. Dept. v. Brand,* 121 Ga. App. 165 (173 SE2d 276) (1970). The line delineating the permissible scope of "consequential damages" recoverable in a condemnation proceeding must be drawn somewhere. We believe that line has been drawn. "In assessing damages for a partial taking of the whole property under condemnation proceedings, there are two issues: first, the market value of the property actually taken, and second — the consequential damages, if any, which *naturally and proximately arise to the remainder of the condemnee's property from the original taking.* [Cit.]" (Emphasis supplied.) *Reed v. City of Atlanta,* 136 Ga. App. 193, 194 (220 SE2d 492) (1975). We, therefore, hold that with regard to the landlocking of her neighbor, Mrs. Simon "is in the same position legally as any other landowner whose property may be damaged by the present condemnation but who is not a party to the case and whose land is not the subject of the condemnation." *Ga. Power Co. v. Bray,* supra at 562 (special concurrence of Justice Ingram). Such damages are, of course, recoverable but not in the context of this condemnation action as consequential damages.

The trial judge — having allowed argument by counsel, having permitted evidence to go to the jury and having given, in effect, confusing charges and

instructions on the issue of consequential damages to a contiguous tract of land having a different ownership from that in which the taking of Mrs. Simon's property occurred — committed harmful error and the judgment must be reversed. *Ga. Power Co. v. Bray,* supra.

2. Citing *Hard v. Housing Auth. of Atlanta,* 219 Ga. 74 (132 SE2d 25) (1963) and other cases, Mrs. Simon urges that since evidence would be admissible to show enhancement in value of the property resulting from the previously announced intention of the condemnor to take an area which includes the condemned property, the jury is also entitled to hear evidence that a project will have a detrimental effect on the remainder of her property. The cases cited by Mrs. Simon deal with the admissibility of evidence on the issue of "just and adequate compensation" wherein all elements of the condemnee's ultimate right to such compensation in the condemnation proceeding are established and uncontroverted. These cases do not, however, address the threshold question that is at issue in the instant case — whether the taking of property adjoining Mrs. Simon's, resulting in the possible private condemnation of a right-of-way across her remaining property is or is not an element of compensable damage in this condemnation action *in the first instance,* as "consequential damages" to her remainder. As we have discussed in Division 1, supra, this question must be decided adversely to Mrs. Simon's position. It, therefore, follows that evidence as to damages which are not recoverable in the condemnation action is not admissible in that proceeding. *Bray,* supra.

3. On cross examination the condemnor's expert witness on the question of value was asked: "But there is no property, really, in the immediate vicinity and that's what makes your appraisal so difficult, is it not, Mr. Strickland? There is no property in the immediate vicinity of the subject property, since that Pizza Inn sale, that you can look to, is there?" The witness responded: "There has been no sales. There are several pieces of property that are for sale at $1.50 a square foot." Mrs. Simon's counsel immediately objected to this response to his question, on the ground that "[o]ffers to sell and offers to buy represent absolutely no evidence of value

whatsoever." The jury was removed, and after a lengthy colloquy on the issue between the court and counsel, the witness stated: "I did not rely on [the fact that several pieces of property were for sale at $1.50 a square foot], it is just further evidence that indicates that what I said is correct." Thereupon the trial judge sustained the objection, the jury returned and was instructed to disregard the remarks of the witness with regard to the offers to sell. The action of the trial judge with reference to this testimony is cited as error by the condemnor.

"While evidence of an unaccepted offer to buy, sell or lease property is not in and of itself evidence of value, yet where a witness testifies as to the value and bases his opinion partly on such offer his testimony is admissible." *Sutton v. State Hwy. Dept.,* 103 Ga. App. 29, 30 (4) (118 SE2d 285) (1961). Accord, *Merritt v. Dept. of Transp.,* 147 Ga. App. 316, 318 (248 SE2d 689) (1978) and cits. The condemnor urges that the testimony was admissible under the *Sutton* and *Merritt* exception — that it was offered not as direct evidence of value but as a partial basis for the witness' testimony as to value. Pretermitting the question of whether the testimony here involved indicated that the witness based "his opinion partly on such offer . . ." the testimony objected to was in any event inadmissible. *Sutton* and *Merritt* dealt with testimony relating to previous offers to purchase or sell the property, the value of which was an issue in the case on appeal. Here, the contested testimony related to offers to sell property in the vicinity of the subject property and the admissibility of such evidence is proscribed by *Southwell v. State Hwy. Dept.,* 104 Ga. App. 479 (122 SE2d 131) (1961). Accordingly, the trial judge did not err in excluding the testimony from evidence.

4. The condemnor next enumerates as error the award of attorney fees and costs. The award was made prior to the Supreme Court's ruling in *DeKalb County v. Trustees, B. P. O. Elks,* 242 Ga. 707 (251 SE2d 243) (1978), that "just and adequate compensation" in a condemnation action no longer includes attorney fees and costs. Under similar circumstances, in *Dept. of Transp. v. Kendricks,* 150 Ga. App. 9 (256 SE2d 610) (1979), and *Housing Auth. v. Southern R. Co.,* 150 Ga. App. 4 (256 SE2d 606) (1979),

this court held that the condemnee had a "vested right" in such an award. Although we deny condemnor's request to overrule those decisions, we need not specifically rule on this enumeration of error. If we had affirmed the judgment now on review, *Kendricks* and *Southern R. Co.* would control and there would be no error in the award of attorney fees and costs to Mrs. Simon. However, our reversal for the reasons set forth in Division 1 of this opinion will result in a new trial on the entire question of just and adequate compensation, the scope of which will be governed by the Supreme Court's decision in *DeKalb County v. Trustees, B. P. O. Elks,* supra.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

ARGUED MAY 29, 1979 — DECIDED SEPTEMBER 7, 1979 — JUDGEMENT ADHERED TO ON REHEARING OCTOBER 18, 1979—

*Arthur K. Bolton, Attorney General, William C. Joy, Assistant Attorney General, D. Field Yow,* for appellant. *Patrick J. Rice,* for appellees.