## 71224. COX COMMUNICATIONS, INC. v. DEPARTMENT OF TRANSPORTATION.

(343 SE2d 765)

BENHAM, Judge.

Appellant brought this action under OCGA § 32-3-11 (a) to set aside a declaration of taking filed by appellee. The property taken is intended to be part of the Presidential Parkway and runs beneath guy wires supporting a broadcast tower owned and operated by appellant. Appellant's expressed concern is that traffic on the road will be endangered by ice falling from the tower. Because of the tower's height, 1,076 feet above ground level, ice forms on the upper portions of the tower and on the guy wires during the winter, even when the temperature on the ground is above freezing. The trial court, after taking evidence and hearing arguments from both sides, held that there had been no bad faith on the part of appellee which would warrant setting aside the declaration of taking. This appeal is from that judgment and from the trial court's denial of appellant's motion for reconsideration. We affirm.

1. In its first enumeration of error, appellant argues that appellee's action in proceeding with the condemnation without having first decided how to protect the public from falling ice was such bad faith as would require that the declaration of taking be set aside.

The bad faith required to support an interference with a condemnor's discretion in determining the necessity of taking land for a public purpose and selecting the location and amount of land necessary "has been equated with conscious wrongdoing motivated by improper interest or ill will." *City of Atlanta v. First Nat. Bank of Atlanta*, 246 Ga. 424 (271 SE2d 821) (1980). The trial court, applying that standard, found no such bad faith, noting that appellee has made efforts through the use of consultants, engineers, and meteorologists to determine the most feasible means of protecting the public from ice falling from the tower and guy wires. Our review of the record shows that the trial court's findings on the issue of bad faith are supported by the evidence. That being so, this court will not disturb the trial court's decision. *City of Atlanta v. Heirs of Champion*, 244 Ga. 620 (261 SE2d 343) (1979).

The fact that appellee has chosen to proceed with the condemnation prior to completing every preliminary phase does not show bad faith. The Supreme Court has held that it is not necessary "that every condition, review, approval and technicality must be completed prior to the authorization of right-of-way acquisition." *Fulton County v. Davidson*, 253 Ga. 734, 735 (325 SE2d 135) (1985). Appellant's first enumeration of error is, accordingly, without merit.

2. Appellant's second enumeration of error concerns the trial court's holding that appellant's "suggestions" for protecting the public from falling ice have been "accepted" by appellee, and the trial court's failure to set aside the declaration of taking on the basis of appellee's alleged refusal to honor prior representations concerning a particular method of protection from falling ice.

We find the "acceptance" of "suggestions" issue to be a matter of semantics. While it is true that appellee has not accepted appellant's suggestions in the sense of adopting appellant's preferred solution to the problem, appellee has clearly accepted appellant's suggestion that the public be protected and has included appellant's proposed solutions in its consideration of the problem. We deem the latter sense of the phrase to be the one employed by the trial court and hold that the court's finding in that regard is supported by the evidence.

Appellant's contention that appellee has refused to honor promises made to Cox and representations made to the public concerning the specific method to be used to protect the public from falling ice is not supported by the evidence in the record. The promises made to appellant were that studies would be conducted to consider the problems involved in locating a road under appellant's tower's guy wires and that an independent consultant would be retained to study the problems. As the trial court noted in its findings of fact, those things have been done. As to appellant's assertion that appellee promised to adopt some solution to the problems prior to acquiring any of appellant's property, we do not find such a promise in the record. Of the documents cited by appellant in support of its assertion, two are affidavits of appellant's employees who stated that a representative of appellee had assured them that a study would be conducted; one is a letter from an attorney representing appellant to an official of appellee, recounting that official's indication that the promised studies could be completed within 30 days; and the last is a letter from a different attorney to appellee's chief executive officer, stating the attorney's "understanding" that the problem would be resolved prior to land acquisition. None of those documents, in our opinion, constitutes a binding commitment by appellee to resolve the problems involving falling ice prior to acquiring appellant's property. In short, there is nothing in the record demanding a conclusion that appellee has practiced fraud on appellant.

Neither do we find evidence compelling a finding that appellee has made wilful misrepresentations to the public amounting to fraud. Appellant's contention in that regard is based on statements in an appendix to appellee's Final Environmental Impact Statement to the effect that a particular method of protecting the public would be employed. Although the statements to which appellant refers do assert that a particular method will be used, the body of the impact statement clearly states that the question of which method would be used is still open. In an affidavit which was not refuted by appellant, the official responsible for preparing the impact statement swore that the statements appellant characterizes as misrepresentations contained unintentional omissions of the other protection option mentioned in the body of the impact statement. Under the circumstances, we find no error in the trial court's finding that appellee had not acted in bad faith.

3. In its motion to set aside the declaration of taking, appellant asserted that appellee had shown bad faith by failure to comply with federal regulations regarding maintenance of airspace over the proposed Presidential Parkway, specifically, 23 CFR § 713.204. Appellant's third enumeration of error is that the trial court failed to set aside the taking on that ground.

We note first that there has been no showing that appellee will not comply with the cited regulation or that a state highway department must comply with all the requirements prior to condemning land for the highway. And even if there has been some noncompliance on the part of appellee with the cited regulation, the record is devoid of evidence that such noncompliance was intentional or motivated by any improper interest or ill will such as would authorize a court to set aside a declaration of taking. See *City of Atlanta v. First Nat. Bank of Atlanta*, supra. We find no error with regard to the trial court's failure to sustain this ground of appellant's motion.

4. Appellant's final enumeration of error concerns the trial court's denial of appellant's motion for reconsideration. In support of that motion, appellant submitted a copy of a resolution of the Atlanta City Council disapproving further construction of the Presidential Parkway and a copy of a resolution of the Atlanta-Fulton County Senate Delegation to the same effect. Appellee, in opposition to appellant's motion, submitted a copy of a letter vetoing the Atlanta City Council's resolution.

We find no error in the trial court's denial of appellant's motion for reconsideration. The "evidence" in support of the motion consisted of the collective opinions of two groups of elected officials, neither of which opinions had any legal effect on the Presidential Parkway and neither of which was probative of appellant's assertion of appellee's bad faith.

5. Perhaps the central concern expressed by appellant in the trial court and on appeal is the precarious position in which it will be placed with regard to liability to motorists who may be injured by ice falling from the tower. While that is certainly an appropriate concern for a property owner in appellant's position, it is not an issue which was properly before the trial court in this action. It must be remembered that the present action was brought under OCGA § 32-3-11, which provides limited grounds upon which a trial court can set aside a declaration of taking. Potential liability of the condemnee is not one of the grounds included. In the course of argument before the trial court, it was suggested that appellant's remedy lies in the condemnation action itself, that appellant could demand as a part of its just and adequate compensation a sum of money sufficient to protect itself against claims by injured motorists. We do not believe that would be the appropriate forum, either. " 'There are only two elements of damages to be considered in a condemnation proceeding: first, the market value of the property actually taken; second, the consequential damage that will *naturally and proximately arise* to the remainder of the owner's property *from the taking of the part which is taken and the devoting of it to the purposes for which it is condemned. . . .*' [Cit.] Consideration of damages which arise from devoting the part of the land taken to the use for which it was taken is not the same as consideration of damages which arise from the entire 'project.' " *Simon v. Dept. of Transp.*, 245 Ga. 478 (265 SE2d 777) (1980), affirming 151 Ga. App. 807 (261 SE2d 710) (1979). See also *Riviera Assoc. v. Dept. of Transp.*, 174 Ga. App. 29, 30 (329 SE2d 221) (1985); *Fountain v. DeKalb County*, 154 Ga. App. 302 (267 SE2d 903) (1980).

As the cited cases make clear, any damages such as those appellant fears, "if compensable, must be sought in a separate action against the condemnor." *Simon*, supra at 480. That is to say, if appellant incurs liability to a passerby who is injured by ice falling from the tower onto the new road, that will be the time to address, in an inverse condemnation action, the issue of appellee's liability to appellant for such injury. See *MARTA v. Trussell*, 247 Ga. 148 (1) (273 SE2d 859) (1981). It was, therefore, appropriate that the trial court did not attempt to adjudicate that issue in the present action.

*Judgment affirmed. Deen, P. J., Birdsong, P. J., Carley and Sognier, JJ., concur. McMurray, P. J., concurs in the judgment only. Pope and Beasley, JJ., concur and also concur specially. Banke, C. J., concurs specially.*

BANKE, Chief Judge, concurring specially.

By specifically excepting from the taking "that portion of the air space over the above described property necessary to maintain the

existing guy wire system which traverses said right-of-way . . . ," the department has, of course, evinced a determination to construct and maintain the proposed highway in a manner which does not physically interfere with the continued maintenance and operation of the appellant's transmission tower, an option evidently seen as less costly than compensating the appellant for the relocation of the tower. The department acknowledges that, as a result of this decision, motorists using the proposed highway may be exposed to danger from falling ice and further acknowledges that, despite having studied this problem since 1960, it has yet to decide how to deal with it. It is, therefore, with some degree of arrogance that the department invokes the principle that mere negligence and bad judgment in the design of a public improvement will not authorize judicial interference with the exercise of the right of eminent domain. See *City of Atlanta v. First Nat. Bank of Atlanta*, 246 Ga. 424, 424-425 (271 SE2d 821) (1980).

The dilemma facing the appellant results from the fact that if a motorist using the proposed roadway is eventually injured by a shard of ice falling from the tower, the state will be immune from any resulting tort liability, leaving the appellant holding the bag. At the hearing on the motion to set the declaration of taking aside, counsel for the department candidly admitted that the appellant might ultimately be forced to relocate the tower at its own expense to avoid such liability, stating: "If they have to buy an insurance policy, then I guess that would be part of the compensation, whatever the premium value of the future projections of buying the insurance policy would be. I don't know. . . . They may have to decide they can't stay there; they can't get an insurance policy; to move if the situation is that bad." Of course, if the appellant were forced to relocate the tower at its own expense, then the department would have succeeded in transferring to it a substantial portion of the economic cost of the project. I concur in the judgment of affirmance only because I believe Division 5 of the majority's opinion adequately protects the appellant from such a result, by making it clear that any future loss suffered by the appellant as a result of "the effect of the project" may be recovered in a future action or actions for damages based on inverse condemnation.

I am authorized to state that Judge Pope and Judge Beasley join in this special concurrence.

DECIDED MARCH 20, 1986 —
REHEARING DENIED APRIL 2, 1986 —

*J. Kirk Quillian, Donald W. Janney*, for appellant.
*John R. Strother, Jr., Beryl H. Weiner, James S. S. Howell*, for

appellee.