A96A0898, A96A0899. MAULDIN et al. v. HOUSING AUTHORITY OF THE CITY OF MARIETTA, GEORGIA; and vice versa.

(477 SE2d 317)

POPE, Presiding Judge.

Condemnees owned property which they leased to a tenant who used it as a neighborhood grocery. Condemnor took this property and assembled it with other parcels on the block to create a site for an office building. When the parties were unable to agree on just and adequate compensation for condemnees' property, a jury trial was held. Condemnor presented two expert witnesses who valued the property at approximately $57,000 and $61,000, while condemnees' expert valued the property at $141,000. The jury returned a verdict of $105,000, and a judgment for this amount was entered. In Case No. A96A0898, condemnees seek a new trial, challenging several evidentiary rulings of the trial court as well as its jury charge. In Case No. A96A0899, condemnor cross-appeals, raising issues which only need to be addressed if condemnees are granted a new trial. Concluding that condemnees' arguments are without merit, we affirm the judgment entered on the jury verdict.

1. Condemnor's experts assessed the market value of condemnees' property standing alone. At approximately the same time condemnor was assembling property on the block, however, a private entity ("DSI") was also trying to assemble the same parcels for a private office building project. Thus, condemnees argued that the market value of their property should be based on its value as part of an assemblage. Their expert evaluated the property in this manner, basing his analysis on several documents; and the trial court's treatment of these documents is the subject of condemnees' first two enumerations of error.

(a) Six or seven months before the taking, DSI sent condemnees a written offer to purchase their property for $312,500, and also sent

a neighbor an offer to purchase his property for $450,000. The neighbor accepted the offer and signed the document, but condemnees did not. DSI's offers contained the following express contingency, however: "It is understood, and Seller acknowledges and agrees, that Purchaser is purchasing the Property with a view toward leasing said property to the United Way of Cobb County. Accordingly, Seller agrees that Purchaser's obligations under this Agreement are expressly contingent on . . . the ability of the Purchaser to lease the Property to United Way upon terms and conditions acceptable to Purchaser." The trial court allowed condemnees' expert to discuss the two offers from DSI as a basis for his valuation of the property, but did not admit the documents as independent evidence of value.

The trial court did not err in excluding the unaccepted offer sent by DSI to condemnees. An unaccepted offer to buy, sell, or lease property is not admissible as direct evidence of the property's value, though testimony referring to the unaccepted offer as a basis for an opinion as to value is admissible. *Merritt v. Dept. of Transp.*, 147 Ga. App. 316 (2) (248 SE2d 689) (1978), rev'd on other grounds, 243 Ga. 52 (252 SE2d 508) (1979).

Nor did the trial court abuse its discretion in excluding the contract which was executed by condemnees' neighbor, but never closed. A purchase agreement which does not close may be admissible as evidence of value, but only if the agreement is not too speculative; the likelihood of consummating the deal must be reasonable enough to permit the conclusion that the purchaser has actually obligated himself to purchase the property at the named price. See *Dept. of Transp. v. White*, 173 Ga. App. 68 (2) (325 SE2d 397) (1984). While the presence of some contingencies may not render an agreement too speculative, see id., the contingency in this agreement effectively eliminates any risk or commitment on the part of the buyer — i.e., the buyer is only obligated to purchase the property if it is able to lease it out at a rate which will bring an acceptable profit, regardless of the purchase price of the property. Indeed, it is arguable that the document in question is merely an option rather than a purchase agreement, and we have said that mere options have no substantial probative value and are therefore inadmissible. See *Dept. of Transp. v. Cochran*, 160 Ga. App. 583 (1) (287 SE2d 599) (1981). Whatever we call the agreement, the illusory nature of DSI's obligation under this agreement makes the probative value of the stated purchase price marginal at best. And its probative value is further diminished by the fact that the subject of the agreement was nearby property rather than the property at issue in this case. Cf. *Dept. of Transp. v. Simon*, 151 Ga. App. 807 (3) (261 SE2d 710) (1979) (distinguishing subject property from nearby property for purpose of analyzing admissibility of unaccepted offers). Accordingly, condemnees' first enumeration of error is

without merit.

(b) Condemnees also challenge the trial court's refusal to admit two exclusive listing agreements. (The trial court did allow condemnees to mention these agreements for the purpose of showing that private assemblage efforts were going on, but not as direct evidence of value.) These documents were even less probative as to value than the documents discussed above, since they did not bind any purchaser in any way. Thus, the trial court's refusal to admit them was not an abuse of discretion.

2. In their third enumeration of error, condemnees argue that the trial court should have worded its jury instruction regarding the unaccepted offer differently. The trial court charged the jury that "any evidence which was admitted to you concerning unaccepted offers to purchase was not admitted as direct evidence of value of the property, but merely as a basis for the opinion evidence of the witness." Condemnees suggest that the court should have instructed the jury instead that "while evidence of an unaccepted offer to buy, sell, or lease property is not in and of itself evidence of value, where a witness testifies as to value and bases his opinion partly on such offer, his testimony is admissible." Both quotes are correct statements of the law. The charge given by the court is more suited to a jury instruction, however, since it directs the jury what to do with evidence that was admitted, rather than abstractly advising them on the law of admissibility. Moreover, condemnees have failed to show that this slight difference in wording harmed them, particularly since the court gave condemnees' preferred instruction during the trial when the evidence about the unaccepted offer was admitted. See *Foote v. State*, 265 Ga. 58 (2) (455 SE2d 579) (1995) (even if a charge is erroneous, reversal is not warranted unless the erroneous charge is harmful in light of the entirety of the jury instructions).

3. Lastly, condemnees contend the trial court should have given its requested charge from *White v. Fulton County*, 264 Ga. 393, 394 (1) (444 SE2d 734) (1994): "The Constitution of the State of Georgia requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not tracts of land. And the question is what the owner has lost, not what the taker has gained." *White* involved a taking in which the jury had to determine the value of two separate estates in the same parcel (i.e., an ownership interest and a leasehold interest), and the issue was whether the sum of the values of the separate interests could exceed the fair market value of the property valued as a whole. The statement quoted above was made in the context of holding that the sum of the values of the separate interests could exceed the fair market value of the property as a whole, and this explains the reference to persons rather than tracts of land. As the case at hand did not require the jury to evaluate sepa-

rate interests in the same parcel of land, that reference would have been unhelpful and might have been confusing. The principle that the State must pay a property owner for property taken from him was adequately covered by the charge given. Accordingly, the court's failure to give a charge which was not adapted to the case and might have been confusing was not error. See *Parrott v. Fletcher*, 113 Ga. App. 45 (5) (146 SE2d 923) (1966).

4. In its supplemental brief, condemnor stated that the arguments raised in its cross-appeal need not be considered if condemnees' appeal is not successful. As we have concluded that all of condemnees' enumerations of error are without merit, condemnor's cross-appeal is dismissed as moot.

*Judgment affirmed in Case No. A96A0898. Case No. A96A0899 dismissed as moot. Andrews and Smith, JJ., concur.*

DECIDED AUGUST 30, 1996 —
RECONSIDERATION DENIED OCTOBER 11, 1996 — 

*Moore & Rogers, John H. Moore, Sarah L. Bargo*, for appellants.
*Charles A. Evans*, for appellee.