## NELSON *v.* CITY OF ATLANTA.

1. Where a city lawfully constructs a viaduct in the extension of one of its streets, which interferes with an abutter's right of ingress and egress, in a suit by the abutter against the city for consequential damages the measure of damages is the diminished market value of the property. If the market value of the abutter's property has not been decreased, there can be no recovery.

2. In ascertaining the extent of any injury to the land and buildings of the abutter, the physical property is to be considered as a unit. Easement of access, and its value for a particular use, are not to be considered as

independent items of damage to be separately compensated, but as component parts of the entire damage.

3. Consequential damages to contiguous property resulting from a change in the grade of a street may be diminished or extinguished by special benefits to the property growing out of the improvement. The fact that other property in the vicinity may also be increased in value from the same cause will not justify excluding special benefits to the particular property in determining whether or not it has been damaged.

4. In the process of ascertaining whether contiguous property has suffered consequential damage from the change of the grade of the street, the market value of the property before and after the change of the grade is to be compared.

5. In estimating the market value of the property, its adaptability to business or other advantageous uses made possible by the construction of the viaduct, as well as the capabilities of the property and all the uses to which it may be applied or to which it is adapted, may be considered.

6. But evidence of the existence of structures on the viaduct, erected by third persons after its completion and before the trial, is inadmissible; because the city can not diminish the amount of the wrong by benefits which other people may give to the property.

7. Nor is testimony admissible that, since the erection of the viaduct, bawdy houses on the street along and over which ran the viaduct had been abandoned, and their abandonment was attributable by the witness to the construction of the viaduct. This result is too speculative and conjectural.

8. The issue was the difference in market value of the property before and after the improvement in the manner in which the work was constructed; and evidence that the city had consented to the closing of Waverly Way, upon condition that it was to be relocated on near-by land to be furnished by a railroad company, was irrelevant.

JUNE 12, 1912.

Action for damages. Before Judge Pendleton. Fulton superior court. July 6, 1911.

*John L. Hopkins & Sons,* for plaintiff.

*James L. Mayson* and *William D. Ellis Jr.,* for defendant.

EVANS, P. J. The Protestant Episcopal Church in the Diocese of Atlanta, an ecclesiastical corporation, is the owner of a lot of land on the corner of Washington and Hunter Streets in the City of Atlanta, fronting about 235 feet on Washington Street and about 183 feet on Hunter Street. On the corner of the lot, facing Washington Street, is constructed a building known as St. Philip's Cathedral, and to the north of the church, facing Washington Street, are the deanery and Sunday-school house, and in their rear sits the Parish house. Several years ago Washington Street, which runs north and south, stopped at its northern terminus at the railroad yards, and travel along that street from Hunter Street

was by means of a street, called Waverly Way, which led into another street of the city parallel with Washington Street. In this condition of affairs the city constructed a viaduct, extending Washington Street northward over the railroad yards and two or three blocks to Gilmer Street. The viaduct was built of the same width as Washington Street, and extended longitudinally over Collins Street from the railroad yards to its northern end. The grade of the viaduct began to ascend just off of Hunter Street. The approach to the cathedral was on a level, but at the northern limits of the church lot the viaduct was elevated twelve or fifteen feet above the land surface. Waverly Way was closed. The owner of the church property sued the City of Atlanta for damages claimed to have resulted from the construction of the viaduct. The city pleaded that the plaintiff should not recover damages, because the consequential benefits to the plaintiff's property exceeded any injury occasioned by the construction of the viaduct. The jury returned a verdict for the defendant; the court refused a new trial, and the plaintiff brings error.

1. It is not contended that the city was without authority in constructing this street improvement, or that any property of the plaintiff was actually taken by the city. The suit is only for consequential damages alleged to have been sustained by reason of the construction of the viaduct. The ultimate and only measure of damages to contiguous property resulting from the construction of a public improvement is the diminished market value of the property. In arriving at the effect of the improvement on the market value, the consequent injury and benefit are to be compared. If the market value of the property has not been diminished, in legal contemplation it has not been damaged, and there can be no recovery. *Streyer* v. *Georgia Southern &c. Railroad Co.,* 90 *Ga.* 56 (15 S. E. 637); *Hurt* v. *Atlanta,* 100 *Ga.* 274 (28 S. E. 65).

2. In ascertaining the extent of the injury to the land and buildings, the physical property is to be considered as a unit. The various elements as affecting the market value of this unit in its relation to the improvement are to be treated as component parts of the entire damage, and not as independent items to be separately compensated for. The easement of access to the property from the street is not to be considered as having a separate value, independently of the property itself, but the property and the ease-

ment of access are to be treated as parts of one and the same estate. Likewise the devotion of the property to a particular use, and its value for that use, are relevant only as an element entering into the consideration of the ultimate fact of diminution of market value. *Streyer* and *Hurt* cases, supra; *Selma R. Co.* v. *Keith,* 53 *Ga.* 178; *Moore* v. *Atlanta,* 70 *Ga.* 611.

3. As the measure of damages is the difference in market value before the proposed construction and afterwards, the effects flowing from the proposed public improvement are to be considered. While it has been sometimes broadly stated that the benefit to the particular property must be special, in contradistinction to general benefits shared by it in common with the generality of property, it is a misconception of the principle to eliminate a consideration of. any special benefit to the particular property because other property in the vicinity may also be specially benefited. The illustration given in 1 Elliott on Roads and Streets, § 279, strongly brings out this point. There it is said that "it seems clear that if a narrow alley should be widened to a broad street and connection thus made with much traveled streets the abutters on the alley would, in the increased value of their property, supposing of course that the widening of the alley does add to the value of the property, receive a benefit not common to the public, but peculiar to the owners of the lots abutting on the alley widened into a street." The effect of the extension of Washington street by means of this viaduct may be to enhance the value of the property on either side of it. The purpose of this inquiry is to ascertain the effect of its construction on the church property, so as to find out if its market value has been diminished. Manifestly an added value to the particular property must not be rejected in the computation of values solely because other property in the immediate vicinity may also be benefited by the public improvement. Metropolitan West Side R. Co. *v.* Stickney, 150 Ill. 362 (37 N. E. 1098, 26 L. R. A. 773).

4. Prior to the constitution of 1877 municipal corporations were not liable to property owners for raising or lowering the grade of streets, but this rule was changed by that provision in the fundamental law that "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." *City of Atlanta* v. *Green,* 67 *Ga.* 386.

The adjustment of values may be made before the completion of the public improvement or afterwards. Irrespective of the time when judicial estimation of the damage is invoked, whether before or after the construction of the public improvement, the range of elements affecting the market value of the property is essentially the same. In all cases the enhancement of the value of the property must spring alone from the improvement made. The time for the estimation of the market value of the property, as affected by the improvement, in cases where condemnation is necessary, is the day of the award. *Gate City Terminal Co.* v. *Thrower,* 136 *Ga.* 456 (71 S. E. 903). This results from the interpretation of the constitutional provision above quoted, that, except in cases where damage results from the improvement of streets by a municipality, the payment of consequential damages must precede the construction of the public improvement. *Athens Terminal Co.* v. *Athens Foundry,* 129 *Ga.* 393 (58 S. E. 891). But where a city, in pursuance of a plan of street improvement, alters the grade of a street to the injury of abutting property, the owner can not demand prepayment of consequential damages as a condition to doing the work on the street, but his remedy is an action for damages. *Moore* v. *Atlanta,* supra. It is a general rule in tort that an action for damages arises upon the infliction of the injury which causes the damage. Hence the time for the computation of damages in this case is upon the construction of the public improvement. *City of Atlanta* v. *Green,* supra.

5. As we have already said, the question for decision in cases where consequential damages to abutting property is claimed by reason of the change of grade of the street is the difference in market value of the property before and after the change of the grade of the street. The difficulty of formulating any rule for the estimate of such values is apparent. Mr. Lewis defines market value to be "the price it will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it." Lewis on Eminent Domain, § 706. This definition is but general, and does not undertake to enumerate any specific factors which fix the value, except the absence of a necessity to sell or buy. In the absence of a standard of value for property, the law provides no means for ascertaining its value other than by the opinions of witnesses. 13 Enc. Ev.

485. All facts which tend to show damage or benefit to the property by reason of the improvement may be considered. The adaptability to business or other advantageous uses of that portion of the street on the viaduct, made possible by the construction of the viaduct, as bearing on the market value of the church property, may be considered. Likewise, all the capabilities of the property and all the uses to which it may be applied or to which it is adapted, both before and after the improvement, may be considered. *Young* v. *Harrison,* 17 *Ga.* 30; 2 Lewis on Eminent Domain, § 706.

6. The trial occurred about four years after the completion of the viaduct. The city was allowed to prove that since the completion of the viaduct certain structures had been erected on it. In admitting the testimony the court ruled that the mere fact of the existence of the structures was irrelevant, but that if it was made to appear that the viaduct made it possible to improve the property in the neighborhood in a way that could not have been accomplished without it, the evidence was admissible as illustrative of such possibilities. We think it was error to admit this evidence, because it allowed a consideration of elements of value that came into existence after the time the law fixes for the estimation of the value of the property in the process of ascertaining whether it had been damaged by the improvement. And, further, because any damage which may result to the church property from the construction of the viaduct can not be diminished by a benefit which might come from the erection of buildings by third persons. The city can not diminish the amount of the wrong by benefits which other people may give to the property. City of Chicago *v.* LeMoyne, 119 Fed. 662 (56 C. C. A. 278).

7. A similar point is presented in the ruling of the court on the clearance of the bawdy houses from Collins Street. It will be recalled that the railroad yards separated the southern end of Collins Street and the northern end of Washington Street, and there was no physical connection between these two streets. It will also be recalled that the viaduct extends longitudinally over Collins Street for its entire length. The court allowed proof tending to show that the removal of the bawdy houses was attributable to the erection of the viaduct, and that its effect was to specially enhance the value of the property of petitioner, as well as others

17

on the viaduct. We think the testimony inadmissible, even when so restricted in effect as it was by the court.

8. The defendant offered in evidence a petition of the Louisville and Nashville Railroad Company, which recited the passage of an ordinance relocating Waverly Way, and an ordinance expressing the city's consent to the closing of Waverly Way, and its relocation 90 feet south of the old location on property to be deeded to the city by the railroad company. The evidence was objected to as irrelevant. The evidence was inadmissible. The issue was not whether Waverly Way was to be permanently closed or relocated, but whether the plaintiff's property had been damaged by the construction of the viaduct in the manner in which it was actually constructed.     *Judgment reversed. All the Justices concur.*