## 63591. DENDY v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

QUILLIAN, Chief Judge.

This action arose in 1978 when the City of Atlanta filed a complaint in the Fulton Superior Court seeking to condemn certain portions of the property belonging to the condemnee, Frederick H. Dendy, Jr. The city desired to condemn two construction easements and the rearmost portion of the condemnee's property in fee simple, and certain rights of access to a side street. Although the petition named others who might claim an interest in the property as condemnees, and all condemnees answered the complaint, the only condemnee involved in this appeal who made a claim of interest was Dendy.

The city amended the complaint by substituting a new legal

description and by condemning all rights in two alleys to the rear of the property. A special master having been appointed, he entered an award to Dendy in the sum of $222,000.00. The City of Atlanta duly filed its appeal to the Fulton Superior Court, after which MARTA was substituted as a plaintiff and the style of the case was amended to reflect this. The case came on for trial at which the jury returned a verdict finding just and adequate compensation for Dendy's property to be $110,175.72. Thereupon, judgment was entered against Dendy in the amount of $111,824.28, this being the difference between the sum awarded by the special master and the verdict of the jury. Dendy filed a motion for a new trial, and subsequently an amendment thereto. The motion for new trial was overruled and from that judgment, appeal was taken. *Held:*

The following background facts should be noted. The entire parcel of land owned by the condemnee Dendy consisted of approximately 30,000 square feet. A building constructed in 1947 occupied a majority of that square footage (approximately 23,000 square feet). This condemnation proceeding involved a partial taking of Dendy's property in that MARTA acquired 7,085 square feet of land and 10,098 square feet of the building from the back portion of the property. While only approximately 7,000 square feet was actually required for location of the proposed MARTA station, in order for construction to take place and the project be completed, 3,013 more square feet of the building had to be demolished and MARTA acquired a temporary construction easement to such portion for 30 months, and also a temporary construction easement for three months to approximately 750 square feet in order to restore the demolished rear wall of the building. The actual date of taking in this case was August 23, 1978. We also observe that at issue were alleys at the rear of the condemnee Dendy's property, which were used as part of MARTA's right-of-way requirements for the terminal station at Garnett Street. Moreover, the pedestrian mall for that station was subsequently located where the alleys were formerly located.

Although the motion for a new trial raised the issue of the general grounds, and the denial was enumerated as error, there is no specific question as to the sufficiency of the evidence on appeal. Instead, the condemnee raises several enumerations of error which deal basically with four principal questions which shall be considered seriatim.

1. The first issue presented is whether the trial court erred in striking testimony by an expert witness as to the replacement cost of the portion of the building condemned. The witness, Chastain, was qualified as an expert in the field of construction, but admitted he did

not know the elements or types of depreciation that affect the market value of a building. The witness testified that in his opinion the replacement cost of the building was $18.00 per foot. He arrived at this figure from an amount of $22.00 per square foot, as the cost, new, to replace the building, and from that figure he deducted $4.00 per square foot for replacement of certain fixtures. He pointed out that the 30-year-old building had a useful life of another 50 to 60 years. The $4.00 deduction included those items which would have to be replaced over that 50 to 60-year span, such as the sprinkler system, the electrical system and the heating system.

In *State Hwy. Dept. v. Murray,* 102 Ga. App. 210 (1) (115 SE2d 711), this court held "In a condemnation action evidence of the replacement cost of the property to be taken is relevant and admissible; however, in a situation where other factors must be taken into account in determining the fair value of the property, if a replacement cost is the only evidence as to value of the property, there is not sufficient evidence of value or damage in the record which will justify a verdict of the jury fixing the amount the condemnee is entitled to receive, and accordingly, upon proper motion, the replacement cost testimony should be stricken from the record." The decision pointed out: "In the case of an absolutely new house, the reproduction cost might possibly be the best measure of damages. However, in the case of property which has some age, depreciation and other factors must of necessity be considered." Id., p. 214. The principles enunciated in *Murray* supra, have been applied in other cases. *Polk v. Fulton County,* 96 Ga. App. 733, 736 (101 SE2d 736); *Zeeman Mfg. Co. v. L. R. Sams Co.,* 123 Ga. App. 99 (179 SE2d 552); *State Hwy. Dept. v. Clark,* 123 Ga. App. 627 (3) (181 SE2d 881); *Housing Auth. City of Atlanta v. Goolsby,* 136 Ga. App. 156, 159 (220 SE2d 466). Compare *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 851 (2) (128 SE2d 520); *Dept. of Transp. v. Dent,* 142 Ga. App. 94 (2) (235 SE2d 610); *Dept. of Transp. v. Kendricks,* 150 Ga. App. 9, 12 (5) (256 SE2d 610). In *Zeeman,* supra, this court emphasized: "The courts have generally held in this context that the owner or lessor is not entitled to replacement of an old structure without deduction for depreciation of the old one." Id. at 102.

MARTA argues that the testimony was properly stricken since the record clearly reveals the condemnee failed to take into account depreciation in arriving at replacement costs. The condemnee argues that the striking of the testimony was error, since *Murray* involved five houses of varying age, from two to twenty years old; thus, in that case replacement costs would not be enough without showing depreciation. Furthermore, it is contended that *Murray,* supra, should not be taken on its face for any more than holding that

replacement cost alone is insufficient, and that a party need not show specifically depreciation, but that the showing of any other factor is sufficient.

In our consideration of this issue we recognize the guiding principle that utilization of the replacement cost method based on the expenses necessary to construct a new building substantially equivalent to the old building would not be an accurate figure for the jury to consider unless depreciation and other factors were figured. Our determination must be as to what constitutes the necessary showing as to depreciation and other factors. *Dept. of Transp. v. Brand,* 149 Ga. App. 547, 548 (3) (254 SE2d 873) was a condemnation proceeding in which this court considered the admissibility of certain evidence. Our decision recited: "The carpenter also gave his opinion of the value of the house, using the replacement cost method. The department moved to strike this testimony on the ground that the witness had not allowed for depreciation. The trial judge thereupon allowed the witness to be recalled. He testified on re-direct examination that since the house was made out of concrete block, only the roof had suffered any substantial depreciation. He further stated that the roof was about ten years old and would last another ten years, and gave an estimate of what it would cost to replace the roof. The department did not cross examine. We hold that the jury was provided with sufficient evidence upon which to make a determination of how much the house had depreciated."

Here the testimony was that as of the time of taking, August 23, 1978, the building in question was 30 years old and apparently had a useful life remaining of some 50 to 60 more years. We also have testimony by the witness as to what it would cost to replace the building at that time (in 1978). Thus, although there was no clear-cut testimony as to depreciation, the same factors are present in this case as were found in *Dept. of Transp. v. Brand,* 149 Ga. App. 547, supra, to be sufficient for the jury to make a determination. Therefore, it cannot be said that evidence of other factors is so lacking as to require the rejection of the testimony. See *Dept. of Transp. v. Kendricks,* 150 Ga. App. 9, 12, supra.

"Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their own knowledge and ideas. *Ga. Power Co. v. Harwell,* 113 Ga. App. 653, 654 (149 SE2d 376) (1966). After a witness has given her basis for opinion evidence as to value it is up to the jury to determine its weight. *Central Ga. Power Co. v. Cornwell,* 139 Ga. 1, 5 (76 SE 387) (1912); *Dept. of Transportation v. Worley,* 150 Ga. App. 768, 772 (258 SE2d 595) (1979)." *Toney v. Johns,* 153 Ga. App. 880, 882 (267 SE2d 298).

The trial judge abused his discretion in striking the testimony of the witness Chastain.

2. The trial judge struck a portion of the testimony of the condemnee Dendy, who attempted to give a value based in part on cost figures he received from the witness Chastain. MARTA argues the testimony was properly stricken, since Chastain's testimony was inadmissible as to the replacement cost. Therefore, Dendy's testimony based on Chastain's testimony would not be admissible under the principles set forth in *Merritt v. Dept. of Transp.,* 147 Ga. App. 316, 320 (3) (248 SE2d 689). From the record, it appears that the witness Dendy included several factors in arriving at his estimate of the total value of the property taken at over $300,000.00. The crucial testimony concerning the value of the part of the building loss arose in response to the following question. Question: "All right, sir. Now, I believe they took some building in addition to that?" Answer: "They took 3,013 feet of the building which I valued at Mr. Chastain's figures that he gave me back in 1977 of $18.00 a square foot, and that came to $54,234.00."

Since we have determined that Chastain's testimony as to replacement costs was not inadmissible, it was error to strike Dendy's testimony predicated on figures given to him by Chastain.

Moreover, even if the testimony of Chastain were not admissible because it was not sustained by other evidence of depreciation and other factors; yet, Dendy's testimony was still not subject to being excised. The vital point here is that it must be shown that the witness Dendy was basing his opinion on cost factors which were inadmissible in evidence and were, in fact, without probative value. As described in *Merritt v. Dept. of Transp.,* 147 Ga. App. 316, 320, supra, the opinion offered must be based on reasons which are "wholly speculative or conjectural."

The rule is well established that: "A witness may give his opinion as to market value even though his opinion is shown to be based in part on evidence that would be inadmissible in its own right." *State Hwy. Dept. v. Whiddon,* 109 Ga. App. 744, 745 (137 SE2d 377); Accord, *Sutton v. State Hwy. Dept.,* 103 Ga. App. 29 (4) (118 SE2d 285). Here the evidence on which Dendy based his opinion was not without probative value but, at worst, merely inadmissible because of a failure to sustain it by a showing as to other factors. In the absence of a showing that the condemnee Dendy's testimony was predicated purely on that of nonprobative evidence proffered by the witness Chastain, it was error to strike the condemnee's testimony. Instead, the rule should have been followed that the evidence be admitted, and that the weight of such opinion evidence be left for the jury's determination.

3. The condemnee contends that the trial judge erred in charging the jury MARTA's requested charges which related to consequential damages and consequential benefits. The charges are contended to be error for two reasons: (1) there was no evidence sufficient to justify such charges, and (2) the charges were erroneous as a matter of law.

(A) There was testimony as to consequential damages and consequential benefits, albeit, only by one witness. The condemnee argues that the testimony given did not relate strictly to either consequential damages or benefits, although the witness stated he considered them to be such. The witness, qualified as an expert in real estate appraisal, testified that consequential damages to the property amounted to $6,400.00 and that consequential benefits to the property were in excess of $26,000.00; thus, in his opinion, the benefits offset the consequential damages. The trial court instructed the jury that they were to consider consequential benefits only to the extent that they did not exceed consequential damages and if no consequential damages were found, then the jury should disregard any consequential benefits to the property. The rule is unquestioned that only slight evidence is necessary to justify a charge on a subject. In the circumstances of this case the condemnee failed to demonstrate any harmful error.

(B) At the conclusion of the trial court's instructions to the jury, the condemnee made the following objection to the charges on consequential benefits: "Basically on the grounds that with the other charges which the Court gave on consequential damages we think unduly influenced the jury. There were more charges on consequential damages than there was on just and adequate compensation, and we feel like there's no such issue in this case."

As this clearly shows, the condemnee failed to object to the charges given on the grounds that they were erroneous as a matter of law. However, the condemnee now contends that the charges are identical to the language condemned in *Wright v. MARTA,* 248 Ga. 372, 373, 376 (283 SE2d 466). There the Court held "Where there is a physical taking of land, just and adequate compensation for the taking is determined as of the date of taking." The Supreme Court explained: "The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking. *State Hwy. Dept. v. Hood,* 118 Ga. App. 720 (165 SE2d 601); *Venable v. State Hwy. Dept.,* 138 Ga. App. 788 (227 SE2d 509)." The Supreme Court found the instruction to the jury was erroneous because "This charge clearly directed the jury to look to a

time when the improvements would be completed and to value the remainder as of that future date." *Wright v. MARTA,* 248 Ga. 372, 374, supra.

The defendant argues at great length that the charges given were so harmful as a matter of law as to fall within proscription of Code Ann. § 70-207 (c) (Ga. L. 1965, pp. 18, 31; through 1968, pp. 1072, 1078), which provides "(c) Notwithstanding any other provision of this section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." We observe that while the charges are indeed similar, the charge in instant case contains a qualifying proviso in that the trial court concluded the charge by stating "in any event, I remind you consequential damages and benefits must be assessed as of the date of the taking, which is August 23, 1978."

Both this court and the Supreme Court have adhered steadfastly to the requirement that objections to charges must be made before the jury returns its verdict, as required by Code Ann. § 70-207 (a). "The exception to the rule found in Code Ann. § 70-207 (c) (harmful as a matter of law) is inapplicable 'unless it appears that the error contended is " 'blatantly apparent and prejudicial' " (*Hollywood Baptist Church v. State Highway Dept.,* 114 Ga. App. 98, 99 (3) (150 SE2d 271) (1966)), and that a " 'gross miscarriage of justice attributable to it is about to result.' " *Nathan v. Duncan,* 113 Ga. App. 630, 638 (6b) (149 SE2d 383) (1966).' *Metropolitan Transit System v. Barnette,* 115 Ga. App. 17 (153 SE2d 656) (1967)." *Sullens v. Sullens,* 236 Ga. 645, 646 (224 SE2d 921). Accord, *Dehler v. Setliff,* 153 Ga. App. 769, 800 (3) (266 SE2d 516), *Matthews v. Taylor,* 155 Ga. App. 2, 3 (270 SE2d 247), *Ga. Intl. Life Ins. Co. v. Harden,* 158 Ga. App. 450, 455 (280 SE2d 863), *McGarr v. McGarr,* 239 Ga. 640 (1) (238 SE2d 427), *Williams v. Kennedy,* 240 Ga. 163, 164 (2) (240 SE2d 51). In *Simmons v. Edge,* 155 Ga. App. 6, 9 (270 SE2d 457), this Court held that error must be "blatantly apparent and prejudicial to the extent that it raises a question as to whether the losing party has, to some extent, at least been deprived of a fair trial because of it." Furthermore, if the verdict returned was within the range of the testimony there is no miscarriage of justice. *Durrett v. Farrar,* 130 Ga. App. 298, 306 (203 SE2d 265); [overruled as to another ground; *Smith v. Telecable of Columbus, Inc.,* 140 Ga. App. 755, 757 (232 SE2d 100)]; *Ga. Intl. Life Ins. Co. v. Harden,* 158 Ga. App. 450, 455, supra.

In the case sub judice, the verdict was within the range of evidence. Any error in the charges as given was not so blatantly prejudicial as to deprive the condemnee of a fair trial. The charges in

this case did not fall within the parameters of the exceptions of Code Ann. § 70-207 (c) as construed by this Court and by the Supreme Court. The condemnee having failed to object based on the grounds he now urges before this Court, his enumerations of error are without merit.

4. The condemnee contends that it was error to strike the testimony of two of the condemnee's appraisers who attempted to give as their respective opinions a direct taking value concerning the loss of alleys. The condemnee urges that the taking of the alleys resulted in direct damages as opposed to consequential damages to his property. The plaintiff contends that the taking of access of the alleys falls within the contemplation of consequential damages to the property, rather than a direct taking of the property.

Each witness whose testimony was stricken testified that he assigned a value of $10,000.00 for the taking of the alleys. One of the witnesses stated that he did not consider such loss to be an item of consequential damage; while the other stated that he did not consider loss of access. The condemnee stresses especially language found in *MARTA v. Datry,* 235 Ga. 568, 579 (220 SE2d 905), where the court considered the question whether a subway could be considered an additional servitude. It was there held: "Accordingly, we find that the MARTA transit station will be an additional servitude on the underlying fee, and the trial court properly enjoined construction of the project until adequate and just compensation is first paid to plaintiffs for the taking of their property for the transit station." In this case, it was never established that the alleys were owned by the condemnee. Moreover, neither of the witnesses testified that the $10,000.00 which each of them applied for the loss of the alleys was in any way related to the fact that the MARTA station would be an additional servitude on the underlying fee of the condemnee.

In *McArthur v. State Hwy. Dept.,* 85 Ga. App. 500 (69 SE2d 781), it was held that: "There are only two elements of damages to be considered in a condemnation proceeding: first, the market value of the property actually taken; second, the consequential damage that will naturally and proximately arise to the remainder of the owner's property from the taking of the part which is taken and the devoting of it to the purposes for which it is condemned, including its proper maintenance and operation, and the measure of these consequential damages is the diminution in the market value of the remainder of the property proximately arising from these causes." In *Dept. of Transp. v. Simon,* 151 Ga. App. 807, 810 (261 SE2d 710), it was held: "in order for a condemnee to recover consequential damages to the remainder of his property when only a part is taken, it must appear that the

damages to the remainder proximately and naturally arose from the condemnation and taking of the *condemnee's own property.*"

Our earlier decisions have recognized a condemnor is liable to a property owner for consequential damages where his means of ingress and egress to a public street are impaired or destroyed. *Mayor &c. of E. Rome v. Lloyd,* 124 Ga. 852 (53 SE 103), *City of Atlanta v. Dinkins,* 46 Ga. App. 19 (166 SE 429), *Mayor of Athens v. Gamma Delta Chapter House Corp.,* 86 Ga. App. 53 (70 SE2d 621).

In *Klumok v. State Hwy. Dept.,* 119 Ga. App. 505 (167 SE2d 722), this Court, in discussing the effect of *State Hwy. Dept. v. Lumpkin,* 222 Ga. 727 (152 SE2d 557) made the following observations. "However, condemnee's right of access was a right appurtenant to those portions of the land which were not taken and was not a species of separate property. See *Folsom v. Gate City Terminal Co.,* 128 Ga. 175 (2) (57 SE 314); *Ball v. State Hwy. Dept.,* 108 Ga. App. 457, 459 (133 SE2d 638); *Price v. State Hwy. Dept.,* 111 Ga. App. 255 (2) (141 SE2d 215). 'In ascertaining the extent of the injury to the land . . . the physical property is to be considered as a unit. The various elements as affecting the market value of this unit in its relation to the improvement are to be treated as component parts of the entire damage, and not as independent items to be separately compensated for. The easement of access to the property . . . is not to be considered as having a separate value, independently of the property itself, but the property and the easement of access are to be treated as parts of one and the same estate.' *Nelson v. City of Atlanta,* 138 Ga. 252, 254 (75 SE 245)." This decision was followed in *Potts v. State Hwy. Dept.,* 120 Ga. App. 164 (169 SE2d 678).

Nevertheless, *State Hwy. Dept. v. Price,* 123 Ga. App. 655, 656 (182 SE2d 175) in discussing these two cases this Court held: "In those cases, however, there was no condemnation of access to the highway, and the issue in *Klumok* was whether the trial judge, in the absence of a request, erred in failing to instruct that loss of access rights to the highway was a specific element of consequential damages. These cases do *not* stand for the proposition that where access easements are specifically condemned, they are only compensable as an element of consequential damages."

In *Streyer v. Ga. S. & F. R. Co.,* 90 Ga. 56 (3) (15 SE 637) involving the locating of a railroad on a public street and a condemnation pursuant thereto, it was held: "In determining the question of damages and assessing the amount, the physical property (land and buildings) and the easement of access thereto from the street are not to be considered as having separate values, as if they were two different parcels of property, but are to be treated as parts of

one and the same estate. Whether damage has been or will be done by the construction and use of the railroad, depends upon whether the market value of the whole estate as one object of ownership has been or will be diminished by reason of devoting the street to this new use."

Recognizing that these various pronouncements do not constitute a model of harmony, we turn again to *MARTA v. Datry,* 235 Ga. 568, supra, which expounds the following maxims. "The right of access, or easement of access, to a public road is a property right which arises from the ownership of land contiguous to a public road, and the landowner cannot be deprived of this right without just and adequate compensation . . ." and "the measure of damages is any diminution in the market value of the property, by reason of such interference."

We therefore find that there was no direct taking of the alleys insofar as the condemnee was concerned but instead, there was a taking of the access to the alleys, and thereby to the public streets, which constituted an element of consequential damages to the remaining land not taken (See *Brock v. Dept. of Transp.,* 151 Ga. App. 905, 906 (262 SE2d 156)); hence, the trial judge did not err in striking the testimony of the two witnesses as to an amount of damages of $10,000.00 for direct taking of the alleys.

5. Any remaining enumerations of error not covered specifically in the first four divisions of this opinion have been examined and found to be without merit.

*Judgment reversed. McMurray, P. J., Shulman, P. J., Banke, Birdsong and Sognier, JJ., concur. Deen, P. J., Carley and Pope, JJ., dissent.*

DECIDED JULY 6, 1982 —
REHEARING DENIED JULY 26, 1982 —

*Eugene R. Simons, Mark Sallee,* for appellant.
*Charles N. Pursley, Jr., Jo Lanier Meeks,* for appellee.

CARLEY, Judge, dissenting.

I concur in Divisions 3, 4, and 5 of the majority opinion. However, I respectfully dissent as to the reversal of the judgment entered on the jury verdict in this case and disagree with the application of the law to the evidence as set forth in Divisions 1 and 2 of the majority opinion. The majority opinion recognizes the rule in this state that evidence of the replacement cost of a building taken by the condemnor is not probative of value unless depreciation and other factors are considered. *State Hwy. Dept. v. Murray,* 102 Ga. App. 210 (1) (115 SE2d 711) (1960). In this case, the majority relies

upon *Dept. of Transp. v. Brand,* 149 Ga. App. 547, 548 (254 SE2d 873) (1979), wherein the trial court's refusal to strike testimony of a witness for the condemnee was affirmed on the basis of the finding that there was sufficient evidence of depreciation to render probative the proffered testimony. Admittedly, *Brand* sets forth a very liberal standard for allowing evidence of replacement cost. However, the "other factors" existing in *Brand* and found to be sufficient are totally lacking in this case.

It is important to note that, in *Brand,* the condemnee's witness first testified only as to replacement cost and, when a motion to strike was made by the condemnor, the witness was brought back to the stand for the specific purpose of showing depreciation. Addressing the issue of depreciation, the witness in *Brand* gave his opinion that nothing in the building had depreciated except the roof and he then proceeded to testify as to the age of the roof, its remaining life and the cost of a new roof. Thus, the *Brand* witness did give his opinion concerning depreciation. In this case, the witness Chastain gave absolutely no testimony regarding depreciation. In fact, counsel for Dendy initially tried to inquire of Chastain as to his consideration of depreciation factors. Dendy's counsel was unsuccessful in eliciting such testimony because the trial court sustained the condemnor's objections as to the qualifications of Chastain to offer relevant depreciation testimony. The condemnee's attorney then abandoned this effort and proceeded to elicit only the testimony discussed in the majority opinion. In fact, on cross-examination, Chastain admitted that he had *no knowledge* of the elements of depreciation which affect the market value of a building. Accordingly, there is absolutely no evidence — in Chastain's testimony or elsewhere — which would allow the jury to determine from Chastain's replacement cost figure the depreciated value of the building as of the date of taking. The effect of the majority opinion in this case is to emasculate the rule of *Murray* and to allow a witness to testify as to the "brand new" replacement cost of a structure upon merely showing the age of a building and its estimated remaining life without any showing of the depreciated value of the building as of the date of taking.

Because I believe Chastain's testimony to have been without probative value and properly stricken, I also disagree with Division 2 of the majority opinion holding as error the trial judge's striking of a portion of the testimony of condemnee Dendy. I cannot agree with the majority that even if Chastain's testimony were inadmissible, Dendy's stricken testimony would be admissible in its own right. My review of the record indicates that the only testimony of Dendy which was stricken was that testimony relating to Dendy's opinion based entirely upon Chastain's opinion as to the replacement value of the

building. Because I believe that the trial court did not err in striking the testimony of Chastain and Dendy, I likewise believe that the judgment entered on the jury verdict should be affirmed. Therefore, I respectfully dissent.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.