### 39102. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. DENDY.

GREGORY, Justice.

Dendy is the owner of a parcel of land comprising approximately 30,000 square feet. An industrial warehouse occupying some 23,000 square feet was constructed on this parcel in 1947. In 1978 the City of Atlanta filed a complaint in Fulton Superior Court to condemn 7,085 square feet of Dendy's land and building and an additional 3,013 square feet of the back portion of the building for use in constructing a proposed MARTA station. Following a hearing a special master awarded Dendy $222,000. The City appealed the award to Fulton Superior Court; thereafter MARTA was substituted as plaintiff in

the case.

At trial MARTA's expert testified that in appraising the value of Dendy's land he used the "market approach" whereby he analyzed sales of comparable tracts in the vicinity of Dendy's parcel. MARTA's expert testified that Dendy's property is located in an area which had been, at one time, one of the principal industrial locations in Atlanta, but that this area has declined in industrial growth and is now pockmarked with industrial buildings which have no remaining useful life. The expert expressed his opinion, based on the market approach, that Dendy's land was worth $9.50 per square foot and that the total value of the land taken by MARTA was $67,300. The expert also testified that Dendy's warehouse, while nearing the end of its economic life, had an interim income potential "before demolition or before a change in its use." In ascertaining this value of the building, the expert relied on the "income approach" whereby he determined the sum the building would rent for, deducted rental expense from this figure and then capitalized it into a value. The expert testified he believed the building could be rented for $24,000 per year for five years, but that rental expenses would reduce this figure to an annual income of $22,582. At the end of the five-year period Dendy would need to spend $11,000 demolishing the building in order to "get it back to a usable state at a better use." On the basis of these figures, the expert calculated the interim value of the building to be $2.89 per square foot or $29,200 for that 10,098 square foot portion of the warehouse taken by MARTA. On direct examination counsel for MARTA inquired of its expert whether this method of valuation took "into account any depreciation on the building." The expert responded that the depreciation factor was "built in" to the valuation method he employed, but he offered no opinion as to the amount of depreciation sustained by the building. The expert went on to explain that had he used the "cost approach" of valuation, that is, determining replacement cost of the building less depreciation, it would have been necessary to acknowledge and account for three types of depreciation: physical depreciation, functional obsolescence and economic depreciation. While the expert gave a definitive example of each of these types of depreciation, he did not attempt to apply them to Dendy's warehouse except to state that he found no functional obsolescence in the building.

Dendy offered the opinion of two real estate experts who testified they used the comparable land valuation method or market approach to determine the value of Dendy's parcel. Both experts estimated that Dendy's land was worth $50 per square foot and that the value of MARTA's taking was in excess of $400,000. Both experts testified that they had based their appraisals on the value of the land

only as they believed the building had no value.

On direct examination one of these experts testified that there are three approaches in determining value: the market approach where comparable sales in the area are compared to property sought to be appraised; the income approach where rental income is reduced by rental expenses, then "capitalized by a certain percentage rate and divided by a certain percentage rate"; and the cost approach whereby the land value is determined by examining comparable sales, then adding the cost of a new or replacement building less depreciation.

To prove the value of his warehouse, Dendy offered the testimony of William Chastain, a general contractor. Chastain testified that the building was "well-maintained"; that the floor and walls were in "excellent shape"; that the roof system was in "good shape" and that there were no cracks in the foundation. Chastain stated his belief that the building "would last" another fifty or sixty years. Chastain further testified that in 1977 or 1978 Dendy had requested him to "make an estimate on the demolition and reconstruction of the portion of the building MARTA was going to take . . . in today's market." Chastain testified that based on 1978 prices it would cost $22 per square foot to rebuild the entire building. He also testified that the sprinkler, electrical and heating systems would not last throughout the remaining life of the building, i. e., another 50-60 years, and that the replacement cost for these items at 1978 prices would be $4 per square foot, leaving a cost of $18 per square foot for reconstructing the building walls, support systems and roof. Counsel for Dendy initially inquired whether Chastain had formed an opinion as to the physical depreciation of the building, but withdrew the question when MARTA's counsel objected to the witness' qualifications. On cross-examination Chastain testified that he was not familiar with the elements of depreciation which affect the market value of a building.

Dendy took the stand and testified that using the market approach he had determined the value of the 7085 square feet of land and building taken by MARTA to be $32.66 per square foot or $231,396. He also testified that he "valued [the additional 3013 square foot of building taken by MARTA] at Mr. Chastain's figure that he gave me back in 1977 of $18 a square foot, and that came out to $54,234." Dendy offered no other evidence of the value of his property.

Out of the presence of the jury MARTA moved to strike Chastain's testimony concerning the replacement cost of Dendy's building on the ground that where a building is not absolutely new, evidence of replacement cost is not sufficient to prove market value unless evidence of depreciation is also shown. Under the same theory

MARTA moved to strike that portion of Dendy's testimony valuing the 3013 square feet portion of the building based on Dendy's 1978 figures of replacement costs.

The jury awarded Dendy $110,175.72 as just and adequate compensation for the property taken by MARTA. Dendy appealed and the Court of Appeals reversed, finding the trial court had erred in striking the testimony of Dendy and Chastain as to the replacement cost of the building.

We granted certiorari to determine whether the Court of Appeals correctly held that the trial court erred in excluding these portions of Chastain's and Dendy's testimony. *Dendy v. MARTA,* 163 Ga. App. 213 (293 SE2d 372) (1982). We find that the trial court properly excluded the testimony as to replacement cost of the building and, therefore, reverse the decision of the Court of Appeals.

(1) (a) In its opinion the Court of Appeals recognizes the rule that "the measure of damages for property taken by eminent domain is ordinarily the fair market value of the property at the time of taking . . . Where . . . the only evidence offered . . . concerns the replacement costs, there is not a sufficient guide given to the jury to enable them to reach an appropriate verdict. In the case of an absolutely new house, the reproduction cost might possibly be the best measure of damages. However, in the case of property which has some age, depreciation and other factors must of necessity be considered." *State Hwy. Dept. v. Murray,* 102 Ga. App. 210, 214 (115 SE2d 711) (1960). See also *Housing Auth. v. Goolsby,* 136 Ga. App. 156 (220 SE2d 466) (1975) and *State Hwy. Dept. v. Clark,* 123 Ga. App. 627 (181 SE2d 881) (1971). While acknowledging that there is "no clear-cut testimony as to depreciation" in this case, *Dendy,* supra, at 216, the Court of Appeals, relying on *Dept. of Transp. v. Brand,* 149 Ga. App. 547 (254 SE2d 873) (1979), found Chastain's testimony as to the age of the building, its remaining useful life and that the building was "well-maintained" and in "good shape" to establish sufficient factors from which the jury could properly determine the value of the building in its depreciated state. We do not agree.

In *Brand* an expert gave his opinion of the value of a condemned concrete block house, using the replacement cost method. He testified that only the roof had suffered substantial depreciation, that the roof was ten years old and would last approximately another ten years. He also gave his opinion of the replacement cost of the roof. The Court of Appeals held that, based on this testimony, "the jury was provided with sufficient evidence upon which to make a determination of how much the house had depreciated." Id. at 549.

In *State Hwy. Dept. v. Murray,* supra, testimony regarding the age of the building, its replacement cost and that it was in "fair

shape" was found to be insufficient to guide the jury in determining the market value of the building. Likewise we find the expert's testimony in both *Brand* and in this case lacks sufficient information for the jury to use in determining the depreciated value of a building. Accordingly, we overrule *Dept. of Transp. v. Brand.*

We point out that Georgia is included in a minority of states which permit the proof of fair market value by use of the replacement cost-less depreciation formula.[1] It has been suggested that this method rarely produces as accurate an estimation of value as either the market approach or income approach, and, consequently, its application should be limited to those instances where neither the market nor income approach is suitable.[2]

If the replacement cost method is used, however, the expert will ideally express his opinion of depreciation in terms of a percentage or other mathematical equivalent which will assist the jury in assigning a definite value to the amount of depreciation sustained by the structure in question. If there is evidence of the replacement cost of the structure, the jury may reduce this figure by the amount of depreciation to determine the fair market value. In this case the condemnee has pointed out various bits of information which give some indication of the general condition of the building, its age and its estimated remaining useful life. However, nowhere in the record is there sufficient evidence for the jury to calculate the amount of depreciation so as to arrive at the fair market value by the re-placement cost method.

(b) Respondent argues that Chastain's testimony "set forth a value which, in effect, depreciated the building." This argument is premised upon Chastain's testimony that the 1978 replacement cost of the building would be $22 per square foot, of which $18 per square foot was estimated to be for structural costs and $4 per square foot to replace the electrical and heating systems. Chastain testified that while the structural portions of the building had a remaining useful life of 50-60 years, the heating and electrical systems would have to be replaced "sometime before then." Respondent argues that the suggested $4 per square foot replacement cost of these systems, based on the price of 1978 materials, is in actuality an estimation of the amount of depreciation per square foot assignable to the building at the time of taking. Respondent claims that Chastain's testimony

---

[1] See Generally, *Orgel on Valuation Under Eminent Domain,* 2d. Ed. (Michie 1953), Vol. 2 § 188 et. seq.; *Nichols on Eminent Domain,* Vol. 4 (1981), §§ 12.313 and 12.313 [1].

[2] *Nichols,* § 12.313.

established the formula that $22 per square foot total replacement cost less $4 per square foot depreciation leaves a value of $18 per square foot of the building in its depreciated state.

However, it is clear from our reading of the record that Chastain testified that it would cost $22 per square foot to replace the building at 1978 prices. He then broke this figure down into estimates of replacing various components of the building which would not necessarily end their useful lives at the same time. His opinion that certain systems in the building would have to be replaced at some future time at a cost of $4 per square foot based on 1978 market prices is not evidence of the amount of depreciation which the building had undergone at the time of taking.

(2) Because we find Dendy's testimony regarding the replacement cost of the 3,013 square foot portion of the building was based solely on Chastain's inadmissible testimony, we find the trial court did not err in excluding it. While it appears that Dendy used the figure Chastain supplied for replacing only the building's structure ($18 per square foot) rather than the figure given for replacing both the physical structure and the heating and electrical systems ($22 per square foot), he offered no evidence of depreciation which would allow the jury to determine the value of the building in its depreciated state. Nor is there any evidence of depreciation in the record which would supply this missing factor.

(3) Last respondent urges that, even absent evidence of depreciation, the excluded testimony was admissible citing the rule that "[a] witness may give his opinion as to market value even though his opinion is shown to be based in part on evidence that would be inadmissible in its own right." *State Hwy. Dept. v. Whiddon,* 109 Ga. App. 744, 745 (137 SE2d 377) (1964). However, the excluded testimony in this case did not purport to be an estimation of the market value of the building, but merely its replacement cost.

*Judgment reversed. All the Justices concur, except Clarke and Smith, JJ., who dissent.*

DECIDED JANUARY 28, 1983 —
REHEARING DENIED FEBRUARY 16, 1983.

*Charles N. Pursley, Jr., Jo Lanier Meeks,* for appellant.
*Eugene R. Simons, Mark Sallee,* for appellee.

CLARKE, Justice, dissenting.

The law requires a condemnor to put up evidence of the fair market value of the land sought to be condemned. Condemnee then

has the right to show to what extent and in what manner this evidence should not be relied upon by the jury. In my view, it is proper to make this showing by offering evidence of the replacement value of the property coupled with evidence of its present condition. I do not believe that the majority is correct in holding that such evidence is inadmissible and I must therefore dissent.

I am authorized to state that Justice Smith joins in this dissent.