A98A1760. CHOUINARD v. CITY OF EAST POINT.
A98A1761. JACKSON et al. v. CITY OF EAST POINT.
(514 SE2d 220)

SMITH, Judge.

This is a condemnation case. The City of East Point condemned a shopping center owned by appellant Alfred Chouinard. Appellants Johnny's Pizza and Starship Enterprises were tenants in the shopping center.[1] Following a lengthy trial, the jury awarded $288,000 to Chouinard, $40,480 to Starship Enterprises, and $20,705 to Johnny's Pizza. Judgment was entered on the verdicts, and appellants filed motions for new trial and for judgment notwithstanding the verdict. Raising several enumerations of error, they appeal from the trial court's denial of these motions. In Case No. A98A1760, appellant Chouinard has raised no contention warranting a new trial, but we remand the judgment entered by the trial court on the jury's verdict for further consideration consistent with this opinion. In Case No. A98A1761 we conclude that appellants Johnny's Pizza and Starship are both entitled to a new trial, and we reverse.

*Case No. A98A1760*

1. Chouinard contends that the condemnation awards to the respective parties, when added together, equal less than the minimum fair market value testified to by the city's appraiser. He contends this violates the trial court's charge that the jury could not award the property owner less than fair market value.

We find no error.

> Market value is a matter of opinion, and may be established by direct as well as circumstantial evidence. It is peculiarly a matter for the jury, and the jury is not absolutely bound even by uncontradicted testimony of experts, but may consider the nature of the property involved, together with any

---

[1] Space in the shopping center was leased to other tenants as well, but they are not parties to this appeal.

other fact or circumstance properly within the knowledge of the jury which tends to establish the value of the property, and may arrive at a different figure than that of the experts, higher or lower, where the verdict reached is not so disparate as to justify an inference of gross mistake or undue bias. [Cit.]

*Dept. of Transp. v. Delta Machine Products Co.*, 157 Ga. App. 423, 428 (5) (278 SE2d 73) (1981).

The jury's total award of $349,185 to Chouinard and the two tenants does not "justify an inference of gross mistake or undue bias," *Delta Machine*, supra, and it is supported by the evidence. The city's appraiser, Terrence Love, testified that he appraised the property using three different methods: the cost approach, the income approach, and the market approach. He used these three methods of valuing the property because "[e]ach one is a check on the other." Id. Under the cost approach, he reached a value of $292,000. He found two different values under the income approach: a value of $293,000 under the five leases and a value of $356,000 "if the property did not have these leases but had higher paying tenants." Under the market approach, he valued the property at $345,000. After reconciling these methods, he concluded that the fair market value of the property, unencumbered and undivided among all interest holders, was $350,000.

Chouinard's appraiser, James Burton, also testified concerning the variety of approaches he used in arriving at the value of the condemned property. Under the cost approach, he estimated a fair market value of $318,600 of the property as a whole; under the market approach, he valued the property at $343,620; and he found a value of $400,000 under the income approach. Although Burton testified that he discarded the cost and market approaches, the city's appraiser apparently found some value in all three approaches, as he used each as a "check" on the accuracy of the other. The jury's total award fell within the range of the evidence presented by the parties' experts as to value of the entire property.

2. One of Chouinard's chief contentions is that the jury incorrectly awarded him less than the fair market value of the property. He argues that the tenants' interests were incorrectly deducted from his interest, which he claims was the full fair market value of the entire property, notwithstanding *Fulton County v. Funk*, 266 Ga. 64, 65 (463 SE2d 883) (1995). Under *Funk*, unless property encumbered by leases is "unique," "a single valuation of the undivided fee will represent the total amount of just and adequate compensation that must be paid for the real property taken and the lessee and lessor will be entitled to their respective shares thereof." Id. at 65.

We find no error. The city's appraiser, Love, testified that he separately valued the respective interests of Chouinard, Johnny's Pizza, and Starship Enterprises. He explained that finding "the value of the tenant's interest as opposed to the landlord's interest is a special part of the income approach" to appraisal.[2] In describing Chouinard's interest, he explained that five leases on the property created encumbrances and that when the property was "placed under leases, then the landlord's position became the leased fee interest in the property. He had certain rights, but he has assigned other rights to these five tenants." Love evaluated Chouinard's interest in the property by calculating the present value of the rents expected over the remaining lease terms of the five tenants. He found this value to be $243,372. He then determined the land value at the end of the lease terms and calculated its present value to be $19,422. Love added these figures together, for a total of $262,794, to determine the value of Chouinard's interest in the property.

This manner of valuing the respective interests of Chouinard and the tenants was authorized under *Funk.* Evidence was presented, as required by *Funk,* that the tenants paid below-market rents. Id. at 65. And evidence was presented from which the jury could have determined that the property was not unique. "[P]roperties are 'unique' such that fair market value will not afford just and adequate compensation when they are not of a type generally bought or sold in the open market. [Cit.]" *Housing Auth. &c. of Atlanta v. Southern R. Co.,* 245 Ga. 229, 230 (264 SE2d 174) (1980). And although Chouinard arguably presented some evidence that the property was unique through his appraiser's testimony that it would be "difficult" to exactly duplicate the property on the open market in Atlanta, other evidence was presented that the property was not unique. The city's appraiser testified that a market for the property existed and described other comparable properties. Also, Chouinard's appraiser testified that shopping centers are bought and sold in the open market. The jury was authorized under the evidence presented to conclude that the property was not unique, and we find no error under *Funk.*

3. Chouinard argues that the city's appraiser, Love, erroneously failed to take rent escalation clauses in the tenants' leases into account in determining value and that Love based his opinions on value on facts not part of the record. He contends that when valuing the property under the income method, Love computed rentals and

---

[2] As described by Love, "[t]he income approach is what an investor looks at if he's going to buy this property and not occupy it for his own use. He wants to know what kind of rent can be gotten and what expenses will have to be paid and what will be the net income that would be available for a mortgage payment, what would be left over for him after that."

then erroneously deducted hypothetical expenses unsupported by the evidence.

Escalation clauses in the leases provided that rent increases would be adjusted "by any change in the index now known as the United States Bureau of Labor Statistics, Consumer Price Index, for all Urban Consumers, all items index for U.S. City Average (1967-100)." When testifying concerning these clauses, Love stated that increased future rents could not "be verified. We don't know the future. We also don't know what these particular tenants can stand in terms of increased rates of their rent." We find no error, for Love testified to the facts serving as the basis for his opinion and the reason why he did not consider the speculative nature of changes in the Consumer Price Index. The sufficiency of the facts supporting his opinion affected only the weight, not the admissibility, of that opinion. See generally *Krause v. Vance*, 207 Ga. App. 615, 616 (1) (428 SE2d 595) (1993).

Love also made certain assumptions concerning expenses when valuing Chouinard's interest, but we conclude that these assumptions did not invalidate his opinion. In reaching his opinion as to value under the income approach, Love did not purport to value the property based on Chouinard's actual expenses. Instead, as explained in detail by Love, he valued it from the perspective of potential purchasers, in particular, the rents they could expect to receive based on comparable rents in the area and the calculations they might make in evaluating the property, including projected expenses.

"The admission of evidence of factors which may reasonably influence a prospective purchaser's decision is a matter within the discretion of the trial court." (Citations and punctuation omitted.) *Flint v. Dept. of Transp.*, 223 Ga. App. 815, 817 (479 SE2d 160) (1996). See also *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336, 337 (2) (467 SE2d 319) (1996). In assigning certain hypothetical expenses to the property, Love simply determined the reasonable expenses that might influence a purchaser's decision, based on his analysis of comparable properties. He carefully explained the basis for his figures, and we find no abuse of discretion in the admission of this testimony.

4. Chouinard enumerates as error the method the trial court used to seat an alternate juror after the trial began. During cross-examination of the first of the city's witnesses, a juror, apparently irritated, commented out loud that "[h]e's wasting our time, your honor" and made other negative comments. After discussion between counsel and the court and further colloquy between the court and the juror, the juror was excused from service. Cross-examination of the witness continued for a short time until the jury was excused for the day, and condemnees' counsel objected to the manner of seating an alternate juror.

The record does not contain a transcript of the actual voir dire proceedings. Although the record does include a transcript of the discussion between the court and trial counsel after the juror was excused and an alternate seated, it is not crystal clear as to any arrangements made at the beginning of trial concerning alternate jurors. Nevertheless, it does appear that the method of appointing an alternate juror after the trial began comported with the mandatory language of OCGA § 9-11-47 (b) stating that "[a]lternate jurors in the order in which they are called shall replace jurors who become or are found to be unable or disqualified to perform their duties." It also appears from the discussion between trial counsel and the trial court after the juror was excused that when the trial court announced its intentions concerning alternate jurors at the beginning of trial, the parties did not object to the manner in which alternate jurors would be selected. We find no error.

5. (a) Chouinard enumerates as error three charges. First, he contends that the court's charge on burden of proof was confusing to the jury. The court charged the jury that the condemnor met its burden of proving just and adequate compensation by introducing evidence of value, that this burden never shifted, and that the burden of producing evidence fell upon the condemnee when the condemnee asserted a greater value. This charge was an accurate statement of the law. See *Dawson v. Dept. of Transp.*, 203 Ga. App. 157, 158-159 (2) (416 SE2d 163) (1992); *Glover v. Dept. of Transp.*, 166 Ga. App. 512 (304 SE2d 567) (1983).

(b) Chouinard contends the following charge was error: "Where an award of damages is sought based on the [loss] of future income, that is, a stream of income coming in over a period of time, it is normally necessary to reduce the amount to its present value." He argues that this charge was incomplete because the jury was allowed to attach any percentage it desired to the discount procedure. According to Chouinard, the trial court should have charged the text of OCGA § 51-12-13, which provides that "[i]t shall be lawful for the trier of fact, in determining the present value of any future earnings . . ., to reduce the same to the present value upon the basis of interest calculated at 5 percent per annum."

We find no error in the trial court's refusal to charge the text of this statute, because the statute applies to actions in tort, not to the issue of just and adequate compensation in a condemnation action. Our law is well settled that "[a] request to charge must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper." (Citation and punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 225 (10) (b) (489 SE2d 329) (1997).

(c) The trial court charged the jury that the parties agreed that the landowner and the tenants were entitled to be paid for their property and respective leases in some amount. Chouinard contends that the portion of the charge implying his agreement that the tenants were entitled to compensation was error, for he states that he "did not agree that the tenants were entitled to any type of an award." Although Chouinard may not have agreed that the tenants were entitled to any compensation, we find no error in the trial court's charge. The substance of the charge was an accurate statement of the law. "A leasehold interest is 'property' for which the leaseholder is entitled to receive compensation when his interest is taken or damaged for a public purpose. [Cit.]" *Bill Ledford Motors v. Dept. of Transp.*, 225 Ga. App. 548, 549 (484 SE2d 510) (1997). Whether Chouinard "agreed" with the well-settled law is irrelevant.

6. Chouinard contends that a party was improperly added after the commencement of trial. Several weeks before trial, the city moved under OCGA §§ 9-11-19 and 9-11-21 to add Johnny's Pizza, Inc. as a party condemnee. For unexplained reasons, the trial court did not enter an order granting this motion until after the trial concluded. As stated by Chouinard, however, "the case was tried as if this new party had been added, and the subsequent judgment was entered with the corporate condemnee shown." After all evidence was presented, Chouinard unsuccessfully moved for mistrial on the ground that Johnny's Pizza had been improperly added.

Before trial, tenants/condemnees Bruce Jackson d/b/a Johnny's Pizza, Lamar Huff, Inc., and Lamar Huff, individually, d/b/a Starship Enterprises, filed an amendment to their proposed pretrial order noting that the name of one of the condemnees was incorrectly identified as Bruce Jackson d/b/a Johnny's Pizza and was more correctly identified as Johnny's Pizza, Inc. Apparently the city then moved to add Johnny's Pizza, Inc. as a party in response to this amendment, but the court did not enter a written order on this motion until after trial.

We find no error. It appears that the tenants merely corrected a misnomer, which they were entitled to do. See generally *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 379-380 (3) (504 SE2d 223) (1998). Chouinard could not realistically claim surprise at the trial level, as he was or should have been aware of the impending change by virtue of the tenants' amendment to the proposed pre-trial order. Chouinard made no timely objection to this proposed amendment or to the city's motion. He instead waited until the end of the lengthy trial, after the case had proceeded as if the new party had been added, to move for mistrial. Under these circumstances, we conclude that he waived objection to the addition or, perhaps more accurately, substitution of Johnny's Pizza, Inc.

7. Chouinard argues that the trial court's judgment was incor-

rect with respect to interest. On September 8, 1989, the city paid into court a lump sum of $326,720, representing its estimate of just and adequate compensation. On November 2 of that year, the trial court entered a consent order reflecting an allocation of this sum among Chouinard and the tenants of the shopping center, and on November 9, 1989, the trial court directed the clerk of court to pay to Chouinard the sum of $243,700, which represented the city's estimate of Chouinard's interest. Chouinard contends that the trial court's judgment erroneously failed to include interest accruing between September 8 and November 9, 1989.

> After just and adequate compensation has been ascertained and established by judgment, the judgment shall include, as part of the just and adequate compensation awarded, interest from the date of taking to the date of payment . . .; but interest shall not be allowed on so much thereof as shall have been paid into the court and was subject to withdrawal by the condemnee without the requirement of posting a bond as required by Code Section 32-3-15.

OCGA § 32-3-19 (c).

As argued by the city, a bond may not have been required in this case by OCGA § 32-3-15. But we cannot agree that Chouinard was not entitled to interest under OCGA § 32-3-19 (c). The lump sum estimate of just and adequate compensation, when paid into the court by the city, was not immediately "subject to withdrawal" by Chouinard, for it had not been apportioned among Chouinard and his tenants. He was able to withdraw his share of the estimated value of the property only after the court entered its November 9 order. We therefore remand this case to the trial court with the direction that the trial court determine interest from September 8, 1989 until November 9, 1989 and enter a judgment reflecting that interest.

### Case No. A98A1761

8. Johnny's Pizza and Starship Enterprises (sometimes collectively referred to as "tenants") contend that the trial court erroneously permitted the city to refer to relocation expenses during opening statements and to submit evidence of such expenses to the jury.

After reviewing the evidence, we conclude that the city has shown very marginal relevance of the objected-to evidence to the issue of the value of trade fixtures removed by Johnny's Pizza to its new location, which was not compensable, as opposed to the value of trade fixtures that were left behind, which may have been compensable. But we also agree with Starship that the trial court erred in allowing the city to introduce evidence concerning Starship's reloca-

tion expenses, for it appears from the record before us that relocation expenses were the subject of separate, administrative procedures instituted under Georgia's version of the Uniform Relocation Assistance & Real Property Acquisition Policies Act of 1970, as codified at OCGA § 32-8-1 et seq. ("the Act"). See *Dept. of Transp. v. Gibson*, 251 Ga. 66 (303 SE2d 19) (1983) (discussing relationship of administrative action seeking relocation expenses under Act to such expenses sought in judicial proceedings).

In November 1989, nearly five years before trial began, the trial court entered a consent order memorializing an agreement between the city and the tenants concerning issues raised by the tenants' motions to "set aside, annul, vacate and dismiss the declaration of taking." Included in those motions were the tenants' contentions that the city violated certain provisions of the Act. The purpose of the November 1995 consent order was to "compromise and settle" these issues. The order recited that the city had paid into the court's registry a certain sum representing just and adequate compensation and reflected the city's allocation of this sum between Chouinard and the tenants. With regard to trade fixtures, relocation, and reestablishment costs, the order specifically stated: "Except as to the trade fixtures of [Johnny's] Pizza, these items are not included in this allocation and are the subject of separate negotiations between Condemnor and the Condemnees." It therefore appears, as argued by tenants, that relocation expenses were to be determined by the separate administrative procedures afforded by the Act. The city does not dispute that the Act applies in this case. Consequently, to the extent that the objected-to evidence was admitted for the sole purpose of proving relocation expenses, it was erroneously admitted. See *Gibson*, supra at 69 (1). While the city has shown slight relevance of the evidence as it pertains to the value of Johnny's trade fixtures, it has failed to show such relevance with regard to Starship's claims. Starship is accordingly entitled to a new trial.

9. A new trial also is required on behalf of Johnny's Pizza, because the city did not introduce adequate evidence of depreciation with regard to equipment used by Johnny's Pizza.

On behalf of the city, Samuel Green performed an appraisal of the restaurant equipment inside Johnny's Pizza. He testified that he basically used the cost and market approaches in appraising this equipment but explained only how he employed the cost approach. He stated that "[t]he cost approach was derived by obtaining the current cost from manufacturers or nationally recognized cost publications, and depreciation was used on observations of physical depreciation, functional inadequacies." He also stated that he depreciated the equipment "because it was used." Over tenants' objection, the trial court admitted into evidence a document containing Green's

itemized descriptions and estimates of values. On cross-examination, Green admitted that he did not find a specific dollar amount of depreciation.

Although Green testified that he considered depreciation when he valued the property, he was also required to provide the jury with some means of calculating the depreciation so as to determine the fair market value by the replacement cost method. See *MARTA v. Dendy*, 250 Ga. 538, 542 (1) (a) (299 SE2d 876) (1983). Not only did he fail to offer any testimony as to the formula or basis he used to compute depreciation, *Dept. of Transp. v. Fitzpatrick*, 184 Ga. App. 249, 250 (3) (361 SE2d 241) (1987), but he also failed to provide a dollar amount of depreciation to the jury. Under these circumstances, reversal is required. See *Dendy*, supra; *Fitzpatrick*, supra. Accordingly, the jury's verdict as to Johnny's Pizza is reversed.

10. The parties' remaining enumerations of error are rendered moot by our holdings in Divisions 8 and 9.

*Judgment in Case No. A98A1760 vacated and case remanded with direction. Judgment in Case No. A98A1761 reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 9, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — ■■■■■■

*Glenville Haldi*, for appellant (case no. A98A1760).

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert*, for appellants (case no. A98A1761).

*Charles S. Johnson III*, for appellee.

