## A04A0969. TORRENTE v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

### (603 SE2d 470)

RUFFIN, Presiding Judge.

This appeal began as a dispute over business relocation benefits paid by the Metropolitan Atlanta Rapid Transit Authority (MARTA) following its purchase of property for construction of a new rail line facility. When acquired by MARTA, the subject property housed several businesses, including Michael Torrente's furniture restoration and design shop. MARTA's use of the property required relocation of those businesses, and MARTA paid Torrente relocation benefits.

Torrente, however, was not satisfied with the amount of benefits paid, and he appealed the award through MARTA's relocation appeals procedure. Again dissatisfied with the result, Torrente petitioned the superior court for review of MARTA's final decision pursuant to OCGA § 50-13-19. He also asserted claims for inverse condemnation and fraudulent misrepresentation. The trial court upheld MARTA's decision regarding benefits owed Torrente and dismissed the inverse condemnation and misrepresentation claims. Torrente appeals, and for reasons that follow, we affirm in part and reverse in part.

The record shows that, in 1991, Torrente rented the space for his shop from MARTA's predecessor-in-title pursuant to a three-year lease. Torrente renewed his lease in 1994 and again in 1997, which extended the lease term to August 31, 2000. Shortly after signing the 1997 renewal, however, Torrente learned that MARTA planned to acquire the property. In March 1998, MARTA informed Torrente that it was prepared to pay relocation benefits to affected property owners and tenants. According to MARTA, it also provided Torrente with a handbook describing the relocation benefits available to him.

Following its acquisition of the property in April 2000, MARTA notified Torrente that he needed to vacate the premises by August 31, 2000, the last day of his lease. Although it is not clear when Torrente began looking for a new shop location, he apparently had difficulty finding an appropriate space and was unable to move out by the specified date. MARTA permitted him to stay on the property as a month-to-month tenant. Eventually, Torrente found a new location and signed a lease commencing January 1, 2001.

Before moving into his new location, Torrente had to renovate the space to make it suitable — and safe — for his woodworking business. MARTA paid for those renovations pursuant to its relocation policy.

Torrente vacated MARTA's property in April 2001, completed the work on his new shop in July 2001, and reopened for business that month.

Torrente admits that MARTA paid "a substantial part" of his relocation expenses. In Torrente's view, however, MARTA failed to make him " 'whole,' " and he sought administrative review of MARTA's failure to pay certain expenses. Specifically, Torrente requested payment for window treatments, telephone installation, and other specific items required at his new location ("claim one"). He also demanded over $5,000 to compensate him for time spent locating a new place of business ("claim two"). And he asserted that MARTA should pay attorney fees he incurred while pursuing the relocation benefits, as well as approximately $190,000 in lost profits for "downtime" and loss of business associated with the move ("claim three").

Following a hearing, the MARTA appeals panel resolved most of the requests in claim one in Torrente's favor. As to claim two, however, the panel rejected Torrente's demand for over $5,000 in expenses allegedly incurred searching for a new business location. It determined that the maximum payment allowed for such expenses was $1,000, which Torrente had already been paid. The panel also concluded that Torrente was not entitled to recover his claim three attorney fees or business losses as part of the relocation benefits.

Torrente appealed the panel's decision to MARTA's general manager/CEO, who affirmed the decision. That ruling constituted MARTA's final determination.

Torrente then petitioned the superior court for judicial review of the final decision. He also alleged separate claims for inverse condemnation and fraudulent misrepresentation. Following a hearing, the superior court affirmed MARTA's final decision. It also determined that Torrente had waived his inverse condemnation claim by pursuing administrative remedies, requiring dismissal of that claim. Finally, it dismissed the misrepresentation claim, finding that Torrente had waived the claim by failing to raise it at the agency level and that the alleged false statements could not sustain an action for fraud.

1. Torrente first argues that the trial court erred in refusing to reverse MARTA's final agency decision as to relocation search expenses, lost profits, and attorney fees (claims two and three).[1] Torrente appealed that decision to the superior court pursuant to Georgia's Administrative Procedure Act, which limits the scope of judicial review.[2] During such review, the trial court may not "substitute its

---

[1] Torrente did not appeal MARTA's decision regarding the expenses in claim one.

[2] See OCGA § 50-13-1 et seq. MARTA's decisions regarding relocation expenses are subject

judgment for that of the agency as to the weight of the evidence on questions of fact."[3] And it may only reverse or modify the administrative decision if the decision (1) violates a constitutional or statutory provision; (2) exceeds the administrative body's statutory authority; (3) resulted from unlawful procedure; (4) is affected by error of law; (5) is clearly erroneous, given the reliable, probative, and substantial evidence; or (6) is arbitrary, capricious, or characterized by an abuse or unwarranted exercise of discretion.[4]

The parties agree that Torrente applied for relocation expenses under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("the Uniform Act").[5] This federal legislation, which has been incorporated into Georgia law, provides relocation benefits to a business displaced when a state agency or other specified public entity uses federal financial assistance to acquire land for a public use.[6] The question presented is whether MARTA properly rejected Torrente's assertion that, under the Uniform Act, he is entitled to reimbursement for $5,000 in relocation search fees, attorney fees incurred while pursuing relocation benefits, and business losses resulting from the relocation.

(a) *Relocation search fees (claim two).* The record shows that, in awarding relocation expenses, MARTA follows the federal rules promulgated to implement the Uniform Act.[7] Those rules specifically provide that "[a] displaced business . . . is entitled to reimbursement for actual expenses, not to exceed $1,000, as the Agency determines to be reasonable, which are incurred in searching for a replacement location."[8] MARTA's relocation handbook similarly states that "[t]he amount reimbursed for costs of searching for a replacement site shall not exceed $1,000.00." And even Torrente admitted at the administrative appeals hearing that, although he submitted a request for search expenses exceeding $1,000, he knew that a $1,000 or $1,500 cap limited recovery for such expenses. Based on the $1,000 limit set by the federal rules and the relocation handbook, MARTA rejected Torrente's claim for relocation search expenses above this amount.

---

to the Administrative Procedure Act. See *Wirt v. MARTA,* 139 Ga. App. 592, 593 (229 SE2d 100) (1976); OCGA § 22-4-11 (b).

[3] See OCGA § 50-13-19 (h).

[4] See id.

[5] See 42 USC § 4601 et seq.; see also OCGA § 22-4-4 (payment of relocation expenses by certain public entities, such as MARTA, are governed by the Uniform Act); *Wirt,* supra (indicating that MARTA is a public entity subject to the Georgia Relocation Assistance and Land Acquisition Policy Act, OCGA § 22-4-1 et seq., and the Uniform Act).

[6] See OCGA §§ 22-4-1 (b); 22-4-2; 22-4-4.

[7] See 49 CFR § 24.1 et seq.

[8] 49 CFR § 24.303 (a) (13).

On appeal, Torrente makes little effort to demonstrate how the trial court erred in refusing to reverse MARTA's decision as to these expenses. He vaguely claims that MARTA could have exercised its discretion to award more than the $1,000 permitted under the regulations. But he has offered no evidence that MARTA somehow *abused* its discretion in refusing to do so. Furthermore, he has not shown that MARTA violated any statute, constitutional provision, or administrative procedure in making its decision. On the contrary, the record shows that MARTA complied with the rules and regulations governing the award of relocation expenses under the Uniform Act.

As noted above, the superior court's review of an administrative decision is governed by OCGA § 50-13-19 (h), which permits reversal of such decision only under limited circumstances. Torrente has not shown that those circumstances exist here. Accordingly, the trial court did not err in refusing to reverse MARTA's decision regarding relocation search fees.

(b) *Lost profits and attorney fees (claim three).* The record requires a similar result as to lost profits and attorney fees. As specifically provided in the federal regulations, "[l]oss of profits," as well as "[a]ny legal fee or other cost for preparing a claim for a relocation payment or for representing the claimant before the Agency," are not recoverable under the Uniform Act.[9] Once again, Torrente has made no cogent argument showing how MARTA erred or acted improperly in refusing to award such expenses, which are explicitly *excluded* from the Uniform Act. His argument seems to be that he is entitled to a "make whole" remedy and thus should be compensated for any expense or monetary loss suffered as a result of the move. But he has cited no provision permitting recovery under the Uniform Act of all expenses, regardless of their nature or amount.[10] Accordingly, the trial court did not err in affirming MARTA's decision as to claim three.

2. Torrente also argues that the trial court erroneously dismissed his inverse condemnation claim, in which he sought reimbursement for expenses not recoverable under the Uniform Act. The trial court found that Torrente waived this claim by challenging MARTA's relocation expense award through the administrative appeals procedure. We disagree.

In *Dept. of Transp. v. Gibson*,[11] our Supreme Court held that, when a condemnee or displaced person chooses to seek relocation

---

[9] 49 CFR § 24.305 (d), (h).

[10] Cf. *MARTA v. Funk*, 263 Ga. 385 (435 SE2d 196) (1993) ("Relocation expenses are *not* awarded so as to put a condemnee in substantially the same position he was in prior to the taking of his property.") (emphasis in original).

[11] 251 Ga. 66, 69 (1) (303 SE2d 19) (1983).

expenses through an administrative determination, he may not later litigate this same issue in a condemnation suit. In other words, if a person pursues and accepts relocation payments through the administrative process, but is unhappy with the amount awarded, he may not then file an inverse condemnation action to obtain further payment of those expenses.[12] As noted by the Supreme Court, to permit such litigation

> would allow condemnees . . . to accept payment of an award in an administrative proceeding while still litigating the same issue in a condemnation jury trial, and require the [agency] to relitigate this same award of "just and adequate compensation." Such an unfair result was not intended under our statutory scheme.[13]

Citing *Gibson*, MARTA claims that "[a] person cannot apply for and accept relocation payments under the administrative provisions then seek additional payments in a condemnation or inverse condemnation action." In our view, MARTA reads *Gibson* too broadly. The Supreme Court's decision certainly precludes Torrente from relitigating issues involving relocation expenses, such as the amount of search fees that he can recover. But nothing in *Gibson* prevents a displaced person from seeking other, nonrelocation expense damages through a condemnation or inverse condemnation action.[14]

It appears that Torrente's inverse condemnation claim revolves primarily around his alleged business losses. In certain circumstances, just and adequate compensation for the taking of property includes damage caused by loss of business.[15] Such damage does *not* fall within relocation expenses.[16] It is a separate element of compen-

---

[12] See id.

[13] Id.

[14] Indeed, relocation benefits were only one aspect of the property owner's condemnation claim in *Gibson*, and the argument relating to these benefits was raised in the context of a motion in limine. The Supreme Court determined that, because the claimant had accepted relocation benefits under the Uniform Act, evidence of his relocation expenses should not be presented to the jury as an element of just and adequate compensation in the condemnation action. See id. at 67-69; see also *Chouinard v. City of East Point*, 237 Ga. App. 266, 272-273 (8) (514 SE2d 220) (1999) (evidence of relocation expenses awarded through the administrative process irrelevant in trial regarding value of condemned property to tenant).

[15] See *Dept. of Transp. v. Clower*, 170 Ga. App. 750, 752-753 (3) (318 SE2d 161) (1984) (damages for lost profits justified by evidence of a "unique" value of the condemned land to the condemnee); *Kessler v. Dept. of Transp.*, 142 Ga. App. 170 (235 SE2d 636) (1977).

[16] See *Funk*, supra at 388 ("The owner of a business who receives just and adequate compensation for his interest in the real property, for his business losses, if any, and for his relocation expenses, if any, is fully compensated for all the consequences suffered as the result of a condemnation.").

sation.[17] In other words, Torrente's effort to recover his business losses through inverse condemnation is not a relitigation of relocation expenses. *Gibson*'s waiver, therefore, has no application.

Accordingly, the trial court erred in dismissing Torrente's inverse condemnation claim as it relates to damage *other* than relocation expenses, such as business losses.[18] To the extent, however, that Torrente seeks to recover relocation expenses through inverse condemnation, *Gibson* precludes recovery.

3. The trial court also erred in dismissing Torrente's misrepresentation claim, in which he asserts that a MARTA employee falsely informed him that the relocation of his business would require no "down time" and that he would be "made whole" through the administrative process. In dismissing this claim, the trial court made two rulings. First, it found that Torrente had waived the claim by failing to raise it at the administrative agency level. It also determined that the alleged misrepresentations involve statements of law. According to the trial court, because legal statements constitute opinions, and because all persons are presumed to know the law, such statements cannot support a misrepresentation claim.

Pursuant to OCGA § 50-13-19 (c), the superior court may only review objections to an agency decision that were raised at the agency level. But Torrente's misrepresentation claim is not part of the administrative appeal. Although brought in superior court at the same time as the appeal, it does not involve review of the agency decision. Instead, it is a separate tort claim alleging that MARTA, through its agents, committed fraudulent misrepresentation. We fail to see how Torrente's failure to mention this claim at the agency level results in waiver.

Furthermore, we cannot agree that the misrepresentation claim should be dismissed on a "legal statements" ground. As correctly noted by the trial court, "a misrepresentation as to a matter of law is a statement of opinion only and can not afford a basis for a charge of fraud or deceit."[19] According to Torrente, however, a MARTA employee falsely stated that his business would suffer no "down time" during the move. This does not appear to be a statement regarding a matter of law. Similarly, the alleged misrepresentation regarding being "made whole" is not necessarily a legal statement. Perhaps a

---

[17] See id.

[18] In so holding, we express no opinion on the merits of this claim. We find only that the waiver principle announced in *Gibson*, which, the record shows, was the sole basis for MARTA's request that the trial court dismiss the inverse condemnation claim, does not require dismissal.

[19] (Punctuation omitted.) *Lakeside Investments Group v. Allen*, 253 Ga. App. 448, 450 (1) (559 SE2d 491) (2002).

MARTA employee assured him that MARTA would waive any limits or restrictions on payment of relocation expenses. Although this type of promise *could* be a misrepresentation of law,[20] at this point we cannot conclude with certainty that such statement is a legal opinion.

A complaint may not be dismissed for failure to state a claim unless the facts, construed favorably to the plaintiff, show that the plaintiff cannot recover.[21] Viewed favorably to Torrente, the facts alleged do not support the trial court's conclusion that the claimed misrepresentations are *necessarily* statements of law. Accordingly, the trial court erred in dismissing Torrente's misrepresentation claim on this basis.[22]

*Judgment affirmed in part and reversed in part. Eldridge and Adams, JJ., concur.*

DECIDED AUGUST 10, 2004.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert,* for appellant.

*Pursley, Lowery & Meeks, Charles N. Pursley, Jr., Christian F. Torgrimson,* for appellee.

---

[20] See *Jones v. Ward*, 201 Ga. App. 757, 759-760 (2) (412 SE2d 576) (1991) (a promise to perform a task that the promisor is not legally authorized to perform is based on a misrepresentation of law).

[21] See *Martin v. Brown*, 222 Ga. App. 566, 567 (474 SE2d 742) (1996).

[22] Once again, we express no opinion as to the ultimate merits of this claim. We simply hold that it should not have been dismissed on the grounds cited by the trial court and urged by MARTA.